38184. CALIFORNIA INSURANCE COMPANY *v.*
BLUMBURG *et al.*

DECIDED MAY 5, 1960.

*Smith, Field, Ringel, Martin & Carr, Sam F. Lowe, Jr.,* for plaintiff in error.

*Haas, Holland & Zinkow, Richard C. Freeman,* contra.

CARLISLE, Judge. ■ As will be seen from the statement of facts above, the policy sued on in this case was issued by the defendant on April 28, 1958. The loss occurred on May 13, 1958, exactly 15 days after the policy became effective. The defendant's contention with regard to the violation of the limitation on the radius of operations clause in the policy depended on proof that during the policy period the insured vehicles had made regular or frequent trips beyond their respective permitted radii of operation. The provision in the policy thus relied on was in the nature of a promissory warranty. Karp *v.* Fidelity-Phenix Fire Ins. Co., 134 Pa. Super. 514 (4 A. 2d, 529). It is executory in character and in the nature of a condition subsequent. Scottish Union & National Ins. Co. *v.* Wade, 59 Texas Civil App. 631 (127 S. W. 1186).

In the first special ground of the motion for a new trial, complaint is made of the refusal of the court to admit in evidence the following written statement allegedly signed by the driver of one of the plaintiffs' vehicles, which statement was taken by one of the defendant's witnesses, an insurance adjuster, who had testified to the circumstances as to the time and place of the taking of the statement and to having witnessed the driver sign the statement: "I am Tom Walton, Jr., age 35, residing Apt. 4-528 Johnson Ave., N. E., Atlanta, Ga. I am employed with Southern Hardwood Lumber Co. as a driver. I have been with them for about 10 years. I have been operating their 1957 G.M.C. Tractor #22 and pulling a 1952 Trailmobile Trailer 22. This unit is used to haul hardwood lumber to and from Atlanta, Ga. We travel over quite a few states. Most of my trips are to and from Morganton, N. C. Some time I make two (2) or three (3) trips

a week. I also haul to Marion, N. C. I have been to Wabino, Wisc. I have also hauled to Brooklyn, N. Y. On this trip I took a load to Morganton, N. C. then to McMinnville, Tenn. picked up a load going to Morganton, N. C. but was involved in an accident on 5-14-58 about 11:50 a.m. on Hwy. #36 about 20 miles north of Marion, N. C. I was following another of our units being driven by Nathaniel who turned over in the hwy. in front of me. We were going down a mountain with bad curve on it. I was traveling in low gear and saw these units upset. I had on my brakes but my units were picking up speed as the brakes were not holding as they should. I thought I could pass by the other units but as I came to them I realized that I could not get by nor stop my units. I was not going fast so I jumped out the left door. My units then went off the right side of the road and down the mountain side. I broke my right foot when I jumped out. Tom Walton, Jr." The statement had been shown by counsel for the defendant to the driver and the time, place, person and circumstances attending the making of the statement, had been called to his mind in accordance with the provisions of Code § 38-1803.

Tom Walton had testified on cross-examination by counsel for the defendant that he had never driven the tractor-trailer truck referred to in this statement to any place but McMinnville, Chattanooga and Toccoa; that he hadn't been any further away than McMinnville, and that he hadn't made too many trips to Morganton, and that he hadn't made too many trips to Marion, either, not more than three or four; that he had never been to Wisconsin nor to Brooklyn, New York. While it is not apparent from the statement that the trips he referred to were made during the policy period, it was certainly competent for this statement to be introduced in evidence for the purpose of impeaching this witness under the provisions of Code § 38-1803. *Manley* v. *Combs*, 197 *Ga.* 768, 777 (2) (30 S. E. 2d 485). "If admissibility of evidence is doubtful, the evidence should be admitted and its weight and effect should be left for the jury's determination. The modern tendency is to relax rather than to restrict the rules as to the admissibility of evidence to the end that the discovery of truth should be aided rather than ob-

structed." *Manners* v. *State,* 77 *Ga. App.* 843 (3) (50 S. E. 2d 158); *Lovejoy* v. *Tidwell,* 212 *Ga.* 750 (95 S. E. 2d 784). If there were any doubt as to the admissibility of this evidence, as seems to have been the fact from the colloquy between the court and counsel, as shown by this ground of the motion, such doubt should have been resolved in favor of admitting the evidence. The trial court erred in excluding this statement and erred in overruling special ground 1 of the motion complaining of that action.

In the second special ground of the motion for a new trial the defendant complains of the following charge of the court: "Gentlemen, I charge you that insurance contracts including endorsements and/or other attachments which form a part of the said contract or policy are to be construed more strongly against the insurer, and that if an insurance contract or any part of it is so drawn as to require interpretation and is fairly susceptible to two different constructions, the one which will be adopted is that most favorable to the insured.

"I further charge you that the policies of insurance will be liberally construed in favor of the object to be accomplished and the conditions and provisions therein will be strictly construed against the insurer as they are issued upon printed forms prepared by an expert at the insurer's instant and upon preparation of which the insured has no voice." It is contended that, while this instruction states a substantially correct principle of law with respect to the interpretation of contracts, it was erroneous in that it submitted to the jury the question as to the proper consruction of the contract when, in fact, that question was one for the court.

This contention is correct. "The construction of a contract is a question of law for the court. Where any matter of fact is involved (as the proper reading of an obscurely written word), the jury should find the fact." Code § 20-701. There was no issue in the case to which this instruction would have been applicable. The rules of law set forth in the Code with respect to the construction of contracts are framed for the guidance and direction of the courts. Except in cases where the meaning of obscurely written words is involved, and where there is evidence tending to

show that the meaning of such words was differently understood in one way or another by the parties to the contract, it is improper to submit to the jury any question as to the construction of the contract. Except in such cases it is clearly error and improper for the court to give the jury any instruction with regard to the manner in which the contract should be construed. *Flake* v. *Bowman,* 28 *Ga. App.* 443 (1) (111 S. E. 747); *Massachussetts Benefit Life Assn.* v. *Robinson,* 104 *Ga.* 256 (7) (30 S.E.918, 42 L. R. A. 261); *Lanier* v. *Council,* 179 *Ga.* 568, 574 (7) (176 S. E. 614). The only possible facet of this case to which this instruction could have been applicable was the meaning to be applied to the words "regular and frequent" found in the endorsement on the policy by which the insured warranted that no regular or frequent trips of commercial vehicles described in the policy are or will be made during the policy period to a location beyond a 150-mile radius (50 miles as to one of the vehicles) from the limits of Atlanta where the vehicles were principally garaged. But there is no ambiguity in the phrase "regular or frequent trips," nor was there any evidence introduced in the case by either side showing a conflict as to the meaning placed on this phrase by the parties to the contract. It is true that it was a jury question as to what particular facts, or more specifically, as to how many trips and with what frequency they would have to be made, would constitute a violation of this warranty such as would work a forfeiture of the contract, and that question should have been submitted to the jury by the trial judge under appropriate instructions. There was nothing about the contract, however, which the jury was authorized to construe, either for or against the insurance company, and the instruction thus complained of was probably harmful error which injected into the case issues not proper for the jury to consider. The overruling of special ground 2 of the motion for a new trial was, therefore, reversible error. *Mergenthaler Linotype Co.* v. *Glover Printing &c. Co.,* 58 *Ga. App.* 634 (199 S. E. 756).

█ The evidence in this case did not demand a verdict for the defendant. It shows that at the time the loss occurred for which this suit was brought, the policy sued on had been in force and effect only 15 days. The plaintiff testified that the trips made by

the vehicles involved in this loss beyond their permissible operating radii were occasioned by an unusual circumstance and request for quick delivery of lumber by one of the plaintiffs' regular customers. The plaintiffs further testified that prior to this occurrence it had been the plaintiffs' custom to make deliveries of lumber to these customers by railroad boxcars, the plaintiffs maintaining a siding at two of its plants for the purpose of loading cars. The judge properly instructed the jury that the mere fact that the losses sued for occurred while the vehicles were being operated beyond their respective operating radii from the City of Atlanta would not of itself bar the plaintiffs from a recovery. Under this evidence and this instruction, a verdict for the plaintiffs in some amount would have been authorized. It follows that the trial judge did not err in overruling the general grounds of the motion for a new trial, nor in overruling and denying the motion for a judgment n.o.v. However, since, as pointed out in divisions 1 and 2 of the opinion, the trial judge erred in overruling the special grounds of the motion for a new trial, it will be necessary that the judgment overruling the motion for a new trial be reversed.

*Judgment reversed. Gardner, P. J., and Townsend, J., concur.*