## 58032. AMERICAN PROTECTION INSURANCE COMPANY v. PARKER et al.

DEEN, Chief Judge.

1. The purpose of the Uninsured Motorist Statute is to place insureds in the same position they would be in in relation to coverage for bodily injuries if the tortfeasors

causing the injuries had obtained at least the minimum prescribed liability insurance. *State Farm Mut. Auto. Ins. Co. v. Murphy,* 226 Ga. 710, 714 (177 SE2d 257, 260) (1970); McCrory v. Hall, 477 F2d 87 (1) (5th Cir. 1973).

2. Insurance policies, where contradictory or ambiguous, will be construed most liberally in favor of the insured. *Hilley v. Teachers Ins. & Annuity Assn.,* 145 Ga. App. 710 (244 SE2d 645) (1978).

3. Where the insuring agreement of the Uninsured Motorists portion of an automobile liability insurance policy provides that the company will pay the insured's damages recoverable from the "operator of an uninsured automobile because of bodily injury . . . caused by accident and arising out of the . . . use of such uninsured automobile" the following rules apply:

(a) In such a clause the word "accident" does not mean that under all circumstances the occurrence must be pure accident, but the "Fact that injury is caused by an intentional act does not preclude it from being caused by 'accident' . . . if in that act something unforeseen, unusual and unexpected occurs which produces the result." State Farm Mut. Auto. Ins. Co. v. Treas, 255 A2d 296 (2) (Md. 1969). We support the view, as exemplified by Nationwide Mut. Ins. Co. v. Mac Ray Roberts, 261 N. C. 285 (134 SE2d 654) (1964) that whether or not such an occurrence is accidental must be decided by viewing it through the eyes of the victim, and if as to the latter it is unforeseen and not caused by his own misconduct, it is, although an intentional assault, accidental as to him. Cf. *Nelson v. American Nat. Ins. Co.,* 67 Ga. App. 775 (21 SE2d 658) (1942); *Gaynor v. Travelers Ins. Co.,* 12 Ga. App. 601 (4) (77 SE 1072) (1912).

(b) In such a clause the term "uninsured automobile" means one as to which there is no insurance applicable under the facts surrounding the occurrence on which the claim is made. See in this regard 26 ALR3d Anno., pp. 883, 887, § 6. Georgia has held that where the named insured occupying the insured automobile is injured by the operator (a person driving with the permission of the named insured) no recovery may be had. *Barras v. State Farm Mut. Auto. Ins. Co.,* 118 Ga. App. 348 (163 SE2d 759) (1968); *Lauer v. Bodner,* 137 Ga. App.

851 (225 SE2d 69) (1976). This is because the statute (Code § 56-407.1 (b)) defines an insured in part as "any person who uses, with the consent, express or implied, of the named insured, the motor vehicle to which the policy applies." The equivalent language in this policy, following four specifications of "insured automobile" ( (a) the automobile described in the policy, (b) a replacement vehicle, (c) a temporary substitute automobile and (d) a non-owned automobile while operated by the named insured) has the following language: "The term 'insured automobile' includes a trailer while being used with an automobile described in (a), (b), (c), or (d) above, but shall not include . . . any automobile while being used without the permission of the owner." Thus, nonpermissive use renders the automobile not an insured automobile for purposes specified in the general insuring agreement, from which it follows that under such a state of facts the automobile is uninsured for UM purposes. That the "no permission" exception quoted above applies to all categories of vehicles described as "insured automobile" is the only possible method of reading this definition since otherwise there would be no exception to the broad statement in (a) that "insured automobile" means the automobile described in the policy, which would arguably extend insurance coverage even if the vehicle had been converted or stolen, a meaning clearly not intended.

Thus, an automobile which at the time the injury is inflicted is being used and operated by one not the owner and driven without the permission of the owner is excluded from the definition of "insured automobile." This is confusing because the general definition of an insured automobile is one listed in the policy and for which a premium charge has been paid. We note the ambiguity, which will be considered later.

(c) An UNINSURED AUTOMOBILE is defined as one with respect to the ownership or use of which there is no bodily injury insurance *applicable at the time of the accident.* By this definition an automobile so used by an uninsured operator without permission of an insured is under the terms of the general insuring agreement an uninsured automobile so that, when operated by such uninsured motorist without consent, it is uninsured

within the meaning of the covering clause. " 'The (uninsured motorists coverage applies not only to the owner of an insured automobile but to his spouse and relatives of either if they live in his household. It covers them while riding in the insured car, or in any other automobile or *while pedestrians if the injury is caused by an uninsured motorist.' Mitchell on Insurance* (1965 Ed.) § 120-102, p. 703." *Gulf American Fire & Cas. Co. v. McNeal,* 115 Ga. App. 286 (3), 290 (154 SE2d 411) (1967). (Emphasis supplied.)

(d) Additionally, the policy, Part IV, Coverage J, which contains the UM insurance, has the following exclusion: "This policy does not apply under Part IV (a) to bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by the named insured or a relative, or through being struck by such automobile." We paraphrase the exclusion for purposes of this opinion as follows:

If the named insured is struck by an uninsured automobile owned by such named insured, she cannot recover. See in this connection Pretzel on Uninsured Motorists (1972 Ed.) 24.4 (b), p. 64: "Uninsured vehicles owned by the insured or members of his household are also excluded from UM coverage. This exclusion was meant to protect the insurer against spurious situations such as insuring two cars for the price of one." The reasonable corollary of this exclusion is that if the named insured is struck and injured by an insured automobile which is owned by her but as to which there is no other insurance applicable, and which is at the time being subjected to a nonpermissive use, it is uninsured within the meaning of the general insuring agreement. This exclusion makes sense in terms of a situation often arising, as where the named insured or resident relative covered by the policy also owns an uninsured automobile, and these cars collide, since it would otherwise afford gratuitous coverage against the insurer as to all such cars for the price of one, a result obviously not intended. See Liberty Mut. Fire Ins. Co. v. Kessler, 232 S2d 213 (Fla. App. 1970); Nationwide Mut. Ins. Co. v. Akers, 340 F2d 150 (1965); Travelers Indemnity Co. v. Powell, 206 S2d 244 (Fla.)

4. Briefly, the plaintiff here is the owner of a Ford

automobile insured by the appellant, the relevant portions of the UM coverage on which we have set out above. Originally, the tortfeasor was driving with her permission, she also occupying the vehicle. When the tortfeasor stopped in an isolated area other than that to which the permission extended, she remonstrated and reached out to the car switch, whereupon he attacked and stabbed her. She twice escaped from the car but was twice recaptured and beaten. The tortfeasor then placed her in a semi-conscious condition on the road behind the car, placed the vehicle in reverse and ran over her body, then put the car in gear driving the wheels over her body a second time and made his escape, leaving her for dead. She sustained serious injuries.

We find nothing in the policy terms to negate the grant of summary judgment to the insured when, as we must, we apply the rule that ambiguous and contradictory policy terms will be construed in favor of this plaintiff. She was admittedly insured. She was not excluded as being struck by "an [owned] automobile other than an insured automobile." But it must also be considered "uninsured" within the meaning of the insuring agreement because under the clear definition of an uninsured automobile it is one as to the use of which there is no bodily injury insurance *applicable at the time of the accident.*

This is, so far as our research as indicated, a case of first impression. We have attempted to construe the contract terms prepared by the insurer in accordance with the liberal purposes for which the legislation was intended. The obvious verbal inadequacies of this policy are comprehensible when it is realized that the insuring agreement covers the named insured while a pedestrian (and therefore occupying neither an insured nor an uninsured vehicle) while the definitions are designed to cover fact situations where two vehicles, one insured and one uninsured, collide. Under the facts of this case the court did not err in granting summary judgment in favor of the insured plaintiff.

*Judgment affirmed. Carley, J., concurs. Birdsong, J., concurs specially. Shulman, J., not participating.*

ARGUED MAY 30, 1979 — DECIDED JUNE 28, 1979 —

*Swift, Currie, McGhee & Hiers, W. Wray Eckl,* for appellant.

*Teddy R. Price,* for appellees.

BIRDSONG, Judge, concurring specially.

In my opinion, this case is controlled by the fact that there was no permissive use of the insured's automobile. If there was permissive use, the following cases control: *Lauer v. Bodner,* 137 Ga. App. 851 (225 SE2d 69); *Barras v. State Farm Mut. &c. Ins. Co.,* 118 Ga. App. 348 (163 SE2d 759).

While it is unquestioned that the appellee originally allowed the tortfeasor permission to drive her car, that permission ceased when she attempted to secure her key from the ignition switch and then had a felony committed upon her person. At this point, the insured's automobile became an uninsured automobile within the terms of the policy.