## 65308. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY v. BURNETT et al.

BIRDSONG, Judge.

Karol Tripp filed a lawsuit against Burnett seeking $252,500 in damages for injuries suffered as a result of being shot between the eyes with a pistol then being held by Burnett while she was a passenger in his automobile. Burnett held an automobile liability insurance policy issued by Georgia Farm Bureau and he looked to this insurer for defense in the litigation.

Georgia Farm Bureau initiated the present action seeking a declaratory judgment as to whether it was liable under the policy. The evidence in this case shows that Burnett was angry with his lady friend Tripp. He admitted depositing a pistol with a friend, apparently because he was afraid of what he might do. Thereafter, he, in effect, forced her to accompany him in his pickup truck. After riding around with Tripp for perhaps a half hour, during which time

he verbally abused her, he drove back to his friend and retrieved the weapon taking it out of the bag containing it and placing it between his legs. He continued to "fuss" at her but according to Tripp, she "tuned him out." After her continued personal coolness toward Burnett, she observed him raise the pistol from the car seat and point it in her direction. Burnett turned down a bumpy street and started to brake the car. Tripp stated she saw nothing or felt nothing so abrupt that should have caused the gun to discharge. Apparently she feared he might shoot her and initially believed that he intentionally pulled the trigger (by deposition testimony). Burnett testified he knew the gun was loaded; that he pointed it in her direction but neither he nor Tripp were aware of what might have occurred to cause the gun to discharge. Though Burnett conceded that it could have been the squeeze of his finger, he did not recall doing so.

The case proceeded to trial based virtually upon the above uncontroverted facts. At the close of the evidence, two issues were presented by way of special interrogatory for jury determination. The issues were (1) whether the injury to Tripp arose out of the ownership, maintenance or use of Burnett's automobile and (2) whether the injury was intentionally inflicted. Burnett and Georgia Farm Bureau moved for directed verdict. The trial court denied Georgia Farm Bureau's motion and granted Burnett's motion as to the first special interrogatory. The jury was presented the second issue and decided that the injury was unintentional. *Held:*

1. Under the facts presented, Burnett's use of the pistol in this case in contemplation of law constituted an assault with a deadly weapon. *Johnson v. State,* 122 Ga. App. 542 (1) (178 SE2d 42). There is no contention that Burnett accidentally pointed the weapon at Tripp. He admitted he deliberately and intentionally pointed a loaded weapon at her. As was said in *Washington v. Hartford Accident &c. Co.,* 161 Ga. App. 431-432 (288 SE2d 343), " 'where a connection appears between the "use" of the vehicle and the discharge of the firearm and resulting injury such as to render it more likely that the one grew out of the other, it comes within the coverage defined'.... In the case before us now, however, the injury bears no apparent relation to the operation of the vehicle or the use to which it was being put. Instead, it resulted from a deliberate assault which took place in the vehicle simply because that is where the victim happened to be when the assailant came 'gunning' for him. Under these circumstances, we can discern no causal connection or relationship between the use of the vehicle and the injury. . . ."

In *American Protection Ins. Co. v. Parker,* 150 Ga. App. 732, 733 (3) (a) (258 SE2d 540), it was stated: ". . . the word 'accident' does not mean that under all circumstances the occurrence must be pure

accident, but the 'Fact that injury is caused by . . . "accident" . . . if in that act something unforeseen, unusual and unexpected occurs which produces the result'. . . [and] whether or not such an occurrence is accidental must be decided by viewing it through the eyes of the victim. . . ."

This declaratory judgment hinges on whether Burnett intentionally shot Tripp or that the discharge of the gun was unforeseen and caused by the "bumpy" road. Tripp's testimony discloses that in all probability the assault, as viewed by her, was neither unforeseen nor accidental. Thus the question more pertinently is whether the injury (i.e., resulting from the discharge of the gun) as opposed to the assault was unforeseen and an accident arising out of the use of the automobile by Burnett. To justify a charge on a given subject, it is not necessary that there should be direct compelling evidence going to that point. It is enough if there be something from which a legitimate process of reasoning can be carried on in respect to it. *East Side Auto Parts v. Wilson,* 146 Ga. App. 753 (2) (247 SE2d 571). In view of Burnett's contention that the discharge of the weapon was accidental and may have resulted from the bumpy road, we conclude that he has raised a question of fact as to whether he intentionally shot Tripp as a part and continuation of the intentional assault committed upon her or whether the gun discharged unintentionally from the use of the vehicle.

By the conclusion and ruling of the trial court on the first interrogatory, as a matter of law, that the discharge of the gun emanated from the use of the vehicle, and thus presumptively may have been accidental, the jury was placed in the difficult position of having to disagree with that conclusion of the court in its consideration of the second interrogatory should it have been inclined to find the discharge of the gun was intentional and not as a result of the use of the car. We conclude the first question as well as the second should have been decided by the jury. Accordingly, it was error to remove the first disputed question of fact from the jury while requiring the jury to answer the second. See *State Farm Mut. Auto. Ins. Co. v. Snyder,* 125 Ga. App. 352 (187 SE2d 878); *Nationwide Mut. Ins. Co. v. Ware,* 140 Ga. App. 660, 666 (231 SE2d 556).

2. Georgia Farm's remaining enumerations of error relate to the court's charge to the jury. It is first contended that the trial court erred in charging the jury that the insurance policy should be construed most favorably toward the insured. Georgia Farm Bureau argues that contract construction is not a jury function and there was no ambiguity in the policy to warrant judicial construction.

The trial court charged: "In Georgia, contracts of insurance are to be construed — that is, interpreted — most strongly against the

insurer — that is, the insurance company — and in favor of the insured person or persons. If a policy of insurance is fairly susceptible of more than one construction, the interpretation most favorable to the insured shall be given effect."

This court in two recent cases has ruled to the contrary. In *Transamerica Ins. Co. v. Thrift-Mart,* 159 Ga. App. 874, 879 (285 SE2d 566) and *Colonial Penn Ins. Co. v. Hart,* 162 Ga. App. 333, 336 (291 SE2d 410), this court held: " 'Contracts, even when ambiguous, are to be construed by the court and no jury question is presented unless after application of applicable rules of construction an ambiguity remains. . . . Insurance policies being contracts, the decisions have held that the matter of construction is for the court.' "

The insurance contract in this case provided coverage for accidental injuries arising out of the use of the insured vehicle, but precluded coverage for intentionally caused injuries. In Division 1 it was concluded that the shooting in this case was not unambiguously "accidental" nor did it unquestionably arise out of the use of the automobile. Thus it was concluded these questions should have been submitted to the jury. The policy terms themselves are not in issue, only whether the facts show the shooting to be accidental or otherwise and whether it resulted from the use of the automobile or was unrelated thereto. Because there was no issue of law as to the meaning of the words "use" or "accident," these words being neither obscurely written nor ambiguous, the court's charge to construe the contract in favor of the insured perforce had to be erroneous as to Georgia Farm Bureau particularly where the construction would be affected by the court's conclusion that the discharge of the gun was related to the use of the car. *Transamerica Ins. Co.,* supra. Under the facts of this case, such error cannot be termed harmless. *Colonial Penn Ins. Co.,* supra.

3. Georgia Farm Bureau next contends the trial court erred in charging the jury as to the definition of accident. Georgia Farm Bureau, however, concedes that this portion of the charge "undoubtedly came from the case of *American Protection Ins. Co. v. Parker,* 150 Ga. App. 732 [(3) 258 SE2d 540]." Georgia Farm Bureau focuses its challenge upon the language to the effect that the jury must determine whether the occurrence was accidental or intentional by viewing it through the eyes of the victim. Assuming the jury viewed the assault through Tripp's eyes, as we view that evidence this was beneficial to the insurer for it portrayed an intentional assault. Moreover, this language was taken directly from *American Protection Ins. Co. v. Parker,* supra, is a correct statement of law and therefore does not constitute error.

4. Appellant's final contention is that the trial court erred in its charge as to the definition of insured under the no-fault provisions of

the policy. Georgia Farm Bureau contends that "[u]nder that charge the jury would have been entitled to find that Karol Eldoria Tripp was an insured." This may be so, but the challenged portion of the charge substantially tracked the language of OCGA § 33-34-2 (5) (formerly Code Ann. § 56-3402b (b), Ga. L. 1974, pp. 113, 114; 1975, pp. 1202, 1203), was applicable to the case and therefore no error was committed.

5. In view of the holding of Divisions 1 and 2, we conclude the errors committed by the trial court require a new trial wherein both special interrogatories should be presented to the jury for determination under correct instructions.

*Judgment reversed. Shulman, C. J., Deen, P. J., Quillian, P. J., Banke, Carley and Sognier, JJ., concur. Pope, J., concurs specially. McMurray, P. J., dissents.*

DECIDED JULY 15, 1983.

*Terry A. Dillard,* for appellant.
*Robert H. Baer, Edward E. Boshears,* for appellees.

POPE, Judge, concurring specially.
1. I concur fully in Divisions 2, 3, 4 and 5 of the majority opinion.
2. While I concur in the judgment of the majority in Division 1 which reverses the trial court's directed verdict for defendants on the issue of "use," I do so based upon a different rationale.

I believe that a verdict should have been directed in favor of the insurer on the issue of whether or not the injury arose out of the "use" of the vehicle. It is apparent to me that Burnett's heated behavior, retrieval of his loaded gun, placement of the gun within his reach in the car, and finally directed at his girl friend add up to an intention to "have it out" with her. That he chose his car as the location is, to me, entirely incidental. His behavior and obvious intent are sufficient to act as an intervening cause so as to break the somewhat tenuous causal connection between the operation of the vehicle and the injury. In other words, the purpose for which Burnett employed the vehicle is simply not a "use" contemplated by the insurer and the insured.

While case law supports the provision of coverage in situations of injury from the discharge of a firearm within a vehicle, those cases lack the criminal element present here. They are, instead, cases in which the persons within the vehicle were there with a common purpose, devoid of hostile or criminal intent, and using the vehicle for its intended purpose. See *Payne v. Southern Guaranty Ins. Co.,* 159 Ga. App. 67 (282 SE2d 711) (1981); *Southeastern Fidelity Ins. Co. v.*

*Stevens,* 142 Ga. App. 562 (1) (236 SE2d 550) (1977). Cf. *Washington v. Hartford Accident &c. Co.,* 161 Ga. App. 431 (1) (288 SE2d 343) (1982). The bounds of reason are stretched to the breaking point by allowing a finding that the injury in this case is even remotely connected with the "use" of the vehicle so as to bring it within the provisions of the insurance coverage sought.

McMurray, Presiding Judge, dissenting.

It is my view that the trial court should be affirmed. I, therefore, respectfully dissent.

On the morning of October 21, 1978, Thomas Lee Burnett was riding around in his automobile, upset with his girl friend, Karol Eldoria Tripp. He stopped and gave a pistol he kept in the automobile to a friend as a precautionary measure. Burnett then resumed riding around and, sometime later, he found Ms. Tripp in the automobile of another man. Burnett stopped the other vehicle, assaulted the driver and had Ms. Tripp get into his own vehicle (apparently, she got in Burnett's automobile voluntarily). Burnett resumed driving again, engaging Ms. Tripp in a mostly one-way unfriendly conversation. He stopped and retrieved his pistol (then in a paper bag) from his friend and put it on the automobile seat.

Burnett turned down a bumpy street and, for an unexplained reason, he removed the pistol from the paper bag and held it in his hand, off the seat and pointed toward Ms. Tripp. Ms. Tripp turned to look at him, apparently not knowing the pistol was pointed in her direction, and the pistol discharged, causing a bullet to strike her between the eyes. Miraculously, Ms. Tripp survived. Neither Burnett nor Ms. Tripp could say what caused the pistol to discharge and Burnett denied pointing the pistol at Ms. Tripp intentionally and asserted that the shooting was unintentional.

Karol Eldoria Tripp filed a lawsuit against Thomas Lee Burnett seeking $252,500 in damages for injuries suffered as a result of being shot between the eyes with the pistol then being held by Burnett while she was a passenger in his automobile. Burnett held an automobile liability insurance policy issued by plaintiff Georgia Farm Bureau Mutual Insurance Company (Georgia Farm Bureau) and he looked to this insurer for defense in the litigation.

Georgia Farm Bureau then initiated an action seeking a declaratory judgment as to whether it was liable under the policy.

The case proceeded to trial based upon virtually the above uncontroverted facts. At the close of the evidence two issues were presented by way of special interrogatory for jury determination. The issues were (1) whether the injury to Ms. Tripp arose out of the ownership, maintenance or use of Burnett's automobile and (2)

whether the injury was intentionally inflicted. Plaintiff and defendants also each moved for a directed verdict. The trial court denied plaintiff's motion and granted defendants' motion as to the first special interrogatory. The jury was presented the second issue and decided that the injury was unintentional.

1. Plaintiff first challenges the trial court's conclusion, as a matter of law, that the injury arose out of the ownership, maintenance or use of Burnett's automobile. Plaintiff contends that there is no evidence of a causal connection between the injury and the ownership, maintenance or use of the automobile. Therefore, the plaintiff contends the trial court erred by directing the verdict for defendants and by not directing the verdict for it. Alternatively, plaintiff contends that it was error to direct the verdict because the jury should have been presented the issue of causal connection.

Under the terms of the insurance policy issued by plaintiff to Burnett, plaintiff is liable "[t]o pay on the behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of: A. Bodily injury ... sustained by any person: ... arising out of the ownership, maintenance or use of the owned automobile. . . ." This is a typical provision and a number of substantially identical provisions have been construed by this court with respect to various circumstances.

The first case in which this court dealt with the issue appears to be *Southeastern Fidelity Ins. Co. v. Stevens,* 142 Ga. App. 562 (1) (236 SE2d 550). In that case, the court held in Headnote 1: "Where the driver of the vehicle in which the deceased was sitting holding a pistol turned from a smooth paved road onto a bumpy, rutted, unpaved road and immediately thereafter the pistol discharged, killing the insured, it cannot be said as a matter of law that the accident did not arise out of the operation, maintenance or use of a motor vehicle as a vehicle...." The court further held that a finding that the injury was directly and proximately caused by the use of the vehicle was not required in "that where a connection appears between the 'use' of the vehicle and the discharge of the firearm and resulting injury such as to render it more likely that the one grew out of the other, it comes within the coverage defined." Id. at page 564 (1). See also *Franklin v. Southern Guaranty Ins. Co.,* 160 Ga. App. 279, 282 (287 SE2d 274).

*Southeastern Fidelity Ins. Co. v. Stevens,* 142 Ga. App. 562, 563, 565, supra, however, did not involve a directed verdict. The trial judge, sitting as trier of fact, found in favor of the insured, and that judgment was affirmed by this court. This court did not hold that the issue of causation was a question for the trier of fact though. On the contrary, in most such cases reaching this court (albeit a slim majority), the issue was decided as a matter of law. See *Washington v.*

*Hartford Accident &c. Co.,* 161 Ga. App. 431 (1) (288 SE2d 343) (affirming a judgment on the pleadings in favor of the insurer); *Payne v. Southern Guaranty Ins. Co.,* 159 Ga. App. 67 (282 SE2d 711) (reversing the denial of the insured's motion for judgment on the pleadings); and *Leverette v. Aetna Cas. &c. Co.,* 157 Ga. App. 175 (276 SE2d 859) (affirming summary judgment for the insurer); but see *Ins. Co. of North America v. Dorris,* 161 Ga. App. 46 (1) (2) (288 SE2d 856) (affirming the denial of the insurer's motion for summary judgment); and *Franklin v. Southern Guaranty Ins. Co.,* 160 Ga. App. 279, supra (reversing a grant of summary judgment to the insurer).

"If there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed." OCGA § 9-11-50 (a) (formerly Code Ann. § 81A-150 (a) (Ga. L. 1966, pp. 609, 656; 1967, pp. 226, 237, 246, 248)). Under this standard and the case law cited above, it is quite clear that plaintiff was not entitled to a directed verdict in the case sub judice. I find on the other hand that defendants were entitled to a directed verdict on this issue. The only evidence presented at trial which could have supported a finding that the discharge of the weapon and the resulting injury did not arise out of the use of the vehicle was that evidence creating an inference that Burnett shot Tripp intentionally (see *Washington v. Hartford Accident &c. Co.,* 161 Ga. App. 431, supra), but that evidence was isolated to the second special interrogatory. Therefore, I would hold that the trial court did not err in directing the verdict in defendants' favor on this issue.

2. Plaintiff's remaining three enumerations of error relate to the jury charge. Plaintiff first contends that the trial court erred in charging the jury that the insurance policy should be construed most favorably toward the insured. Plaintiff argues that contract construction is not a jury function and, furthermore, that there was no ambiguity in the policy to warrant construction.

The complained of language is: "In Georgia, contracts of insurance are to be construed — that is, interpreted — most strongly against the insurer — that is, the insurance company — and in favor of the insured person or persons." The trial court followed this by stating: "If a policy of insurance is fairly susceptible of more than one construction, the interpretation most favorable to the insured shall be given effect."

Clearly our law is that contracts, even when ambiguous, are to be construed by the court and no jury question is presented unless after application of applicable rules of construction an ambiguity remains. See *American Cas. Co. v. Crain-Daly Volkswagen,* 129 Ga. App. 576, 579 (200 SE2d 281). In *Calif. Ins. Co. v. Blumburg,* 101 Ga. App. 587

(2), 592 (115 SE2d 266), this court held it was reversible error for the trial court to give the jury any instructions with regard to the manner in which the contract should be construed, citing certain cases. Hence, as there was nothing in that case for the jury to consider about the contract it was "probably harmful error" for the court to inject into the case "issues not proper for the jury to consider." This rule has been followed in such recent cases as *Transamerica Ins. Co. v. Thrift-Mart,* 159 Ga. App. 874, 879, 881 (3) (285 SE2d 566); and *Colonial Penn Ins. Co. v. Hart,* 162 Ga. App. 333, 335-336 (291 SE2d 410). However, in the case sub judice the trial court clearly explained to the jury that this was a declaratory action in which the parties sought a judgment declaring their respective rights under an insurance policy; the case was not one for damages or who should recover or who should not recover any personal injuries or damages. The court advised the jury not to give any undue influence to any part of the charge but accept the court's charge as a whole and that the jury was to determine whether or not the injury to Ms. Tripp was intentionally inflicted upon her by Thomas Lee Burnett, the insured. The case was given to the jury with reference to special verdicts. First, as to whether Ms. Tripp's injury arose out of the ownership, maintenance or use of the automobile covered by the insurance policy, but in this respect a verdict in the case had been directed for the defendants (Tripp and Burnett), that is, that Ms. Tripp's injuries arose out of the ownership, maintenance, and use of the automobile covered by the insurance policy and the court clearly advised the jury to answer this question in the affirmative as directed by the court. The court then instructed the jury that by directing the verdict as to this point the court was not expressing an opinion as to what the jury's verdict should be as to the remaining issue (which was whether or not the injury to Ms. Tripp was intentionally inflicted upon her by Thomas Lee Burnett, the insured). The court then amply instructed the jury with reference to how it should proceed with a determination on this point as to consideration of the evidence. The court explained to the jury that the parties had stipulated and agreed that the plaintiff had issued a policy of insurance to the defendant insured (Burnett) and that the policy is in existence. The court then proceeded to charge the jury as to the meaning of certain terms, that an insurance policy is a contract or agreement between two or more parties, and under the no fault insurance law and other Georgia law as to contracts of insurance the term "insured" would include a person occupying the vehicle. The jury was charged that contracts of insurance are to be construed, that is, interpreted most strongly against the insurer, the insurance company, and in favor of the insured person or persons and that if the policy of insurance is fairly

susceptible of more than one construction "the interpretation most favorable to the insured shall be given effect." The court then charged that the plaintiff had the burden of proving any exclusions in its policy of insurance and any such exclusions are applicable to the facts of the case.

A reading of the entire charge, as a whole, fails to disclose that the trial court in any wise charged the jury that the jury was involved in the construction of the contract (the policy of insurance). The court gave a definition of a contract as "an agreement between two or more parties for the doing of some specified thing." The trial court directed an affirmative answer to the question as to whether this defendant's (Tripp's) injury arose out of the ownership, main-tenance, or use of the automobile covered by the insurance pol-icy and instructed the jury that *the only question for the jury to decide was whether or not her injury was intentionally inflicted by the insured* so as to exclude her from coverage under the insurance policy.

I, therefore, would hold that the challenged portion of the charge, when taken together with the charge as a whole, gives us no cause to disturb the judgment. See *City Dodge v. Gardner,* 130 Ga. App. 502, 504 (2) (203 SE2d 729) affd., 232 Ga. 766 (208 SE2d 794); *State Hwy. Dept. v. Davis,* 129 Ga. App. 142 (1), (2) (199 SE2d 275). I cannot see how this instruction had any effect on the verdict, and, if error, was harmless.

3. I agree with the majority that there was no error in the other two enumerations of error to the charge as found in Divisions 3 and 4 of the majority opinion.

As there was no reversible error in the case sub judice, I simply cannot accept the majority view in reversing the decision of the jury and the trial court and requiring a new trial. Following the jury verdict, I find no error in the judgment finding liability insurance coverage and that the defendant Tripp is afforded insurance coverage.