**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff and Appellant,**

v.

**Randall P. WERTZ, Kathy Wertz, Travis P. Wertz, Dale Anderson, and Dawnelle Martin, Defendants and Appellees.**

No. 18729.

Supreme Court of South Dakota.

Argued Nov. 29, 1994.

Reassigned July 7, 1995.

Decided Nov. 21, 1995.

Roy A. Wise of Richardson, Groseclose, Kornmann and Wyly, Aberdeen, for plaintiff and appellant.

Thomas P. Tonner of Tonner, Tobin and King, Aberdeen, for defendants and appellees Wertz.

Marilyn Marshall Maloney of Maloney and Maloney, Aberdeen, for defendants and appellees Anderson and Martin.

MILLER, Chief Justice (on reassignment).

State Farm Mutual Automobile Insurance Company (State Farm) appeals the trial court's declaratory judgment requiring coverage for intentionally inflicted injuries. We reverse and remand.

### FACTS

State Farm issued an automobile insurance policy to Randall and Kathy Wertz, covering a 1986 Oldsmobile Calais automobile. According to the policy, State Farm agreed to "pay damages which an insured becomes legally liable to pay because of: (a) bodily injury to others, and (b) damage to or destruction of property including loss of its use, *caused by accident* resulting from the ownership, maintenance or use of your car[.]" (Emphasis supplied.)

On August 30, 1991, their adult son Travis Wertz (Wertz) received permission to use the insured vehicle and thereby became an insured under the policy. He drove to a bar in Aberdeen, South Dakota, to talk to Dawnelle Martin, a woman with whom he had maintained a stormy relationship. In order to hold a more private discussion, the two went outside to Wertz's car to visit. An argument ensued and Wertz drove out of the parking lot, refusing to let Martin leave the vehicle.

Wertz headed east from Aberdeen on Highway 12, telling Martin he was going to drive to the Interstate, find a semi-truck, and collide with it in order to kill them both. Wertz had threatened Martin in this manner on previous occasions. However, as the drive continued, Wertz's anger subsided. He returned toward Aberdeen to take Martin home. During the episode, Wertz stopped the vehicle twice; once, to allow Martin to use the restroom and another time to engage in sexual relations with her.

Fearing she may be in trouble, Martin's friends left the bar in search of the couple and drove to her residence. Upon seeing the Wertz vehicle, many of Martin's friends jumped into their cars to give chase. Once again, Wertz drove out of Aberdeen with Martin, this time heading north on Highway 281. At times, Wertz veered toward the other cars and, at other times, he simply sped off.

One of Martin's friends notified the Brown County Sheriff's Office of the situation. The deputy sheriff arrived on the scene, took over the chase and pursued Wertz to Ellendale, North Dakota. North of Ellendale, a semi-truck owned by Dale Anderson was parked off the road. Still under hot pursuit, Wertz deliberately steered his vehicle toward the parked semi. Martin grabbed the steering wheel in order to avoid a collision. Wertz jerked back the wheel, intentionally causing his vehicle to collide with the parked semi.

Martin commenced a civil action against Wertz. She sought damages for false imprisonment, assault, and negligence. Anderson also sued Wertz on a theory of negligence for damage to his truck. State Farm responded by bringing a declaratory judgment action, seeking a determination of its rights and

liabilities under the policy. It argued that, since Wertz intentionally collided with the semi, it was not an "accident." State Farm alleged it had no obligation to defend Wertz under the policy.

The trial court found in pertinent part: "Although defendant Travis P. Wertz claimed at the trial that he did not intentionally run into the parked semi, the evidence to the contrary is overwhelming. This court finds that his actions were intentional." The trial court ruled that State Farm had no duty to defend or indemnify Wertz on the assault and false imprisonment claims. The court reasoned that false imprisonment and assault could have been accomplished without the use of a motor vehicle and injuries resulting from such torts were not a foreseeable risk contemplated by the South Dakota Legislature or State Farm. In contrast, the trial court ruled State Farm did have an obligation to defend and indemnify Wertz on the negligence claims filed by Martin and Anderson. The court concluded that the language of the policy and the state's Financial Responsibility Laws provide coverage for injuries sustained by "accident." Because the injuries sustained were accidental from the standpoint of the injured parties, the court held State Farm was responsible for defending and indemnifying Wertz. State Farm appeals, raising the following issues:

I. DOES THE WORD "ACCIDENT," AS USED IN AN AUTOMOBILE LIABILITY INSURANCE POLICY, INCLUDE THE ACTIONS OF AN INSURED DRIVER WHO INTENTIONALLY CRASHES INTO A PARKED SEMI?

II. DOES SOUTH DAKOTA'S FINANCIAL RESPONSIBILITY LAW MANDATE COVERAGE FOR INTENTIONAL TORTIOUS CONDUCT?

III. IF COVERAGE FOR INTENTIONAL TORTIOUS CONDUCT IS MANDATED, SHOULD IT BE FOR MORE THAN THE MINIMUM AMOUNT OF COVERAGE REQUIRED BY SOUTH DAKOTA'S FINANCIAL RESPONSIBILITY LAW?

## STANDARD OF REVIEW

The construction of a statute is a question of law. *Aman v. Edmunds Cent. Sch. Dist. No. 22–5,* 494 N.W.2d 198, 199 (S.D.1992) (citations omitted). The interpretation of a written contract is also a question of law. *Dirks v. Sioux Valley Empire Elec. Ass'n, Inc.,* 450 N.W.2d 426, 427–28 (S.D. 1990). Questions of law are reviewable on appeal under a *de novo* standard, and this Court is not required to defer to the trial court's legal determinations. *Aman,* 494 N.W.2d at 199 (citing *In re SDDS, Inc.,* 472 N.W.2d 502, 507 (S.D.1991); *In re State & City Sales Tax Liability of Quality Serv. Railcar Repair Corp.,* 437 N.W.2d 209, 210–11 (S.D.1989); *Permann v. Dep't of Labor, Unemp. Ins. Div.,* 411 N.W.2d 113, 117 (S.D. 1987)).

An insurer's duty to defend and its duty to pay on a claim are severable and independent duties. *Hawkeye–Security Ins. Co. v. Clifford,* 366 N.W.2d 489, 490 (S.D. 1985). "The duty to defend is much broader than the duty to pay a judgment rendered against the insured." *Id.* The insurer bears the burden of showing that it has no duty to defend its insured. *North Star Mut. Ins. Co. v. Kneen,* 484 N.W.2d 908, 912 (S.D.1992). To satisfy this burden, "[t]he insurer must show that the claim *clearly* falls outside of policy coverage." *Id.* (citing *City of Fort Pierre v. United Fire and Cas. Co.,* 463 N.W.2d 845, 847 (S.D.1990); *Bayer v. Employers Reinsurance Corp.,* 383 N.W.2d 858, 861 (S.D.1986); *Hawkeye–Security,* 366 N.W.2d at 492) (emphasis in original). "If, after considering the complaint, and when appropriate, other record evidence, doubt exists whether the claim against the insured arguably falls within the policy coverage, such doubts must be resolved in favor of the insured." *City of Fort Pierre,* 463 N.W.2d at 847 (citing *Hawkeye–Security,* 366 N.W.2d at 492).

## DECISION

Under the State Farm policy at issue, State Farm agrees to pay damages on behalf of an insured for bodily injury and property damage "caused by accident" resulting from

the use of the vehicle covered by the policy. State Farm also agrees to defend any suit against an insured for such damages.[1] The policy does not define the word "accident." Nor does the policy contain any exclusionary language concerning intentional acts or intentional harm caused by the insured.

South Dakota's Financial Responsibility Law, SDCL ch. 32–35, provides no definition of "accident." SDCL 32–35–2 simply requires a driver to prove the financial ability to pay damages "on account of accidents ... arising out of the ownership, maintenance, or use of a vehicle ..." up to a certain sum.

In *Taylor v. Imperial Cas. & Indemnity Co.*, 82 S.D. 298, 302–03, 144 N.W.2d 856, 858 (1966) (citations omitted), we concluded that the word "accident" in a liability insurance policy is ordinarily defined as "an undesigned, sudden and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force."

State Farm argues that, because Wertz intentionally ran into the semi, the collision was not an "accident" as required for policy coverage. State Farm alleges no responsibility to either defend or indemnify Wertz. State Farm's interpretation of the policy is premised on viewing the word "accident" from the insured's perspective; State Farm reasons that since the insured, Wertz, acted intentionally, the injuries he caused were not "by accident." Appellees Anderson, Martin and Wertz do not challenge the trial court's finding that Wertz intentionally caused his vehicle to collide with Anderson's semi. Instead, they argue that whether or not an injury occurred by "accident" should be interpreted from the standpoint of the person injured; coverage would therefore extend to collisions which are intended by the tortfeasor but unforeseen by the injured party. The trial court accepted their contention and ruled that the word "accident" should "be defined from the standpoint of the injured party rather than the party perpetrating the intentional act." The trial court therefore held that State Farm was obligated to defend and indemnify Wertz on the negligence charges brought by Anderson and Martin. We disagree with the trial court's conclusions.

■ Martin and Anderson's existing claims involve allegations that Wertz acted negligently when he caused his vehicle to collide with Anderson's semi. " '[M]ere allegations of negligence in a transparent attempt to trigger insurance coverage by characterizing intentionally tortious conduct as negligent will not persuade [this] court to impose a duty to defend.' " *Tri–State Co. of Minnesota v. Bollinger*, 476 N.W.2d 697, 704 (S.D.1991) (Wuest, J. concurring in part and dissenting in part) (quoting *Iowa Kemper Ins. Co. v. Ryan*, 172 Mich.App. 134, 431 N.W.2d 434, 436 (1988)). While the trial court found that Wertz acted intentionally when he collided with the semi, our analysis must go beyond that finding. The critical issue in this case is not whether Wertz intended to act, but whether he intended to inflict the resulting injuries to Martin and Anderson. "Most, if not all, negligently inflicted injuries or damages result from intentional acts of some kind, but coverage still exists under normal [insurance] policy provisions if there was no intention to cause, by the commission of the acts, the resulting injuries or damages." *Snyder v. Nelson*, 278 Or. 409, 564 P.2d 681, 683 (1977). As one court explained:

> [A]n insured's act is not an accidental contributing cause of injury when the insured actually intended to cause the injury that results.... Nor can an insured's intentional act be an accidental cause of injury when it is so inherently injurious that it cannot be performed without causing the resulting injury.... If the insured did not intend to inflict the injury on the victim by his intentional act, and the act was not so inherently injurious that the injury

---

1. The pertinent portion of the State Farm policy provides:

    We will:
    1. pay damages which an *insured* becomes legally liable to pay because of:
    a. *bodily injury* to others, and
    b. damage to or destruction of property including loss of its use,
    caused by accident resulting from the ownership, maintenance or use of *your car;* and
    2. defend any suit against an *insured* for such damages with attorneys hired and paid by us.

was certain to follow from it, the act as a contributing cause of injury would be regarded as accidental[.]

*Vermont Mut. Ins. Co. v. Malcolm*, 128 N.H. 521, 517 A.2d 800, 802–03 (1986).[2] *See also Providence Mut. Fire Ins. Co. v. Scanlon*, 138 N.H. 301, 638 A.2d 1246, 1249 (1994) (holding "an act is inherently injurious if it is certain to result in *some* injury, although not necessarily the particular alleged injury") (emphasis in original). Consequently, we must focus on whether Wertz intended to cause personal injuries to Martin and property damage to Anderson's semi when he caused his vehicle to collide with the semi.

■ There is ample evidence showing that Wertz intended to cause the damages that resulted from the collision. The record indicates that Wertz was traveling at approximately fifty-five miles per hour at the time of the collision. A law enforcement officer testified that there were no skid marks or other indications that Wertz attempted to slow down prior to hitting the semi. The Brown County Deputy Sheriff who observed the accident stated Wertz did not slow down prior to the collision and that the movement of the vehicle suggested the collision was deliberate. Anderson also told a law enforcement officer that the Wertz vehicle looked like it was trying to hit the semi. Furthermore, statements by Martin indicate Wertz sought to injure or kill her when he drove the car into the semi. She testified that when Wertz left the bar with her he threatened to kill them both on the Interstate. She also told an investigator for the Brown County Sheriff's Department that Wertz was trying to kill her when he steered toward the semi. In a handwritten statement submitted to a North Dakota Highway Patrol Officer, Martin wrote that Wertz kept telling her to warn her friends who were pursuing the car to turn around or he would "drive off the spill-

way or run into a car." Martin testified that she yelled to her friends to "back off" or Wertz would kill her. Likewise, Wertz told several medical workers that he drove the car into the semi as part of suicide pact with Martin. This evidence, taken together, provides strong proof that Wertz intended to injure or kill Martin when he drove his car into the semi. Furthermore, property damage to the semi was a natural and probable consequence of driving the car into the parked semi at fifty-five miles per hour. *See Bollinger*, 476 N.W.2d at 705 (Wuest, J., concurring in part and dissenting in part) (stating "an insured intends or expects the natural and probable consequences of his or her actions"). We can therefore readily infer that Wertz intended to damage the semi when he deliberately drove his vehicle into it.

■ Having determined that Wertz intentionally caused personal injuries to Martin and property damage to Anderson, we must now consider whether such conduct falls within the coverage provided by State Farm. We conclude that there is no coverage in such circumstances, because public policy prohibits extending insurance coverage to an individual who intentionally harms others. In *Raphtis v. St. Paul Fire & Marine Co.*, 86 S.D. 491, 494, 198 N.W.2d 505, 507 (1972), we wrote: "[I]t is contra bonos mores to allow a man to insure against the consequences of his own rascality or recover for a loss resulting from his own criminal conduct." We have similarly observed: "Were a person able to insure himself against economic consequences of his intentional wrongdoing, the deterrence attributable to financial responsibility would be missing." *City of Fort Pierre*, 463 N.W.2d at 849 (citing *Ambassador Ins. Co. v. Montes*, 76 N.J. 477, 388 A.2d 603, 606 (1978)). *See also Bollinger*, 476 N.W.2d at 705 (Wuest, J., concurring in part

---

**2.** The following passage demonstrates the distinction between intentional acts and intentional injuries:

[Injuries would be caused by accident] when an insured driver negligently but quite intentionally made a right turn and injured a pedestrian who, unbeknownst to him, was stepping from the curb into the insured's new line of travel. But if the insured saw the victim stepping from the curb and proceeded to make his turn with an intent to strike the victim, his use of the automobile as a weapon was so inherently injurious that the collision would not be regarded as an [accident] even if the insured did not actually intend to break any bones. In each example the insured acted intentionally; in each the particular injury was unintended. The act as a cause of injury was accidental in the one case, but not in the other.

*Vermont Mut. Ins. Co.*, 517 A.2d at 803.

and dissenting in part) (stating "if a single insured is allowed through intentional or reckless acts to *consciously* control risks covered by the policy, *the central concept of insurance is violated*") (emphasis in original).[3] We will not allow Wertz to contravene this well-established public policy and inflict deliberate harm with financial impunity.

■ Anderson, Martin and Wertz contend the Financial Responsibility Law mandates coverage for harm intentionally inflicted by the insured so long as the harm is unforeseen by the victim. However, the reference to "accidents" in South Dakota's Financial Responsibility Law, SDCL ch. 32–35, does not require insurance coverage for intentional torts. The Financial Responsibility Law must be considered in light of the public policy previously enunciated. Because public policy prohibits contracts which relieve intentional wrongdoers of responsibility, we cannot conclude that the reference to "accidents" in SDCL 32–35–2 is intended to mandate insurance coverage for intentional tortious conduct. Furthermore, we are persuaded by other jurisdictions which hold that compulsory insurance laws are not intended to extend insurance protection to individuals who intentionally inflict harm. *Williams v. Diggs*, 593 So.2d 385, 387 (La.Ct.App.1991); *Snyder*, 564 P.2d at 684; *Utica Mut. Ins. Co. v. Travelers Indemnity Co.*, 223 Va. 145, 286 S.E.2d 225, 226 (1982). As the Louisiana Court of Appeals observed in an analogous case:

> It is true, as maintained by plaintiff, that the public policy of providing compensation to victims injured by motor vehicles is a strong one and has been applied by the courts of this state a number of times to strike down as invalid certain exclusionary clauses in automobile liability policies. However, ... another well-established public policy must also be given consideration. This is the policy against allowing a person to insure himself against his own intentional acts causing injury to others. The rationale for this prohibition is to forbid the extension to the insured of a li-

cense to intentionally injure others with impunity and still fall under the coverage of his insurance policy.... We do not believe the Legislature intended to mandate coverage for such injuries in view of the strong policy against allowing persons to insure themselves against liability for injuries they intentionally inflict.

*Williams*, 593 So.2d at 387 (citations omitted). Because we believe the public policy against insuring intentional wrongdoers predominates, we hold that State Farm had no duty to defend or indemnify Wertz for damages he intentionally inflicted.

Reversed and remanded.

KONENKAMP, J., and WUEST, Retired Justice, concur.

SABERS, J., concurs specially.

AMUNDSON, J., dissents.

GILBERTSON, J., not having been a member of the Court at the time this case was submitted, did not participate.

SABERS, Justice (concurring specially).

Although I agree with the majority based on the fact that the trial court found that Wertz *intentionally* caused his vehicle to collide with the parked semi, the situation would be different if the trial court had found that Wertz was *attempting to evade* his pursuers.

The majority relies on *City of Fort Pierre v. United Fire & Cas. Co.*, 463 N.W.2d 845 (S.D.1990) and Justice Wuest's minority writing in *Tri–State Co. of Minnesota v. Bollinger*, 476 N.W.2d 697 (S.D.1991). I stand firm on my writing in *Bollinger*, 476 N.W.2d at 702–03, on Duty to Defend and Duty to Pay, which Justice Amundson joined *and* on my writing in *Fort Pierre*, which Justice Henderson, the majority author of *Bollinger*, joined, on the applicability of "Exclusion(s) for intentional loss" as follows:

**3.** A legislative expression of this public policy is also found in SDCL 53–9–3, which provides: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsi-

bility for his own fraud or *willful injury to the person or property of another* or from violation of law whether willful or negligent, *are against the policy of the law.*" (Emphasis supplied.)

An insurance policy exclusion for a loss caused intentionally by an insured applies only when the insurance company is able to show that the insured acted for the purpose of causing the loss. See *Rajspic v. Nationwide Mut. Ins. Co.*, 110 Idaho 729, 718 P.2d 1167 (1986); *Horace Mann Ins. Co. v. Independent School Dist. No. 656*, 355 N.W.2d 413 (Minn.1984). That is, the loss itself must be intended before the exclusion will apply. As explained by the court in *Allstate Ins. Co. v. Steinemer*, 723 F.2d 873 (11th Cir.1984):

> Under the majority rule the exclusion applies if the insured intended to do a particular act, and intended to do some harm, even if the harm actually done was radically different from that intended.... On the other hand, an "intentional injury" exclusion will not apply if the insured intentionally does an act, but has no intent to commit harm, even if the act involves the foreseeable consequences of great harm or even amounts to gross or culpable negligence.

*Id.* at 875 (citation omitted); *see also Farmers Ins. Group v. Sessions*, 100 Idaho 914, 918, 607 P.2d 422, 426 (1980) ("We follow the great weight of authority and hold that for this 'intentional tort' exclusion to operate the insurance company must be able to show that its insured acted ... for the purpose of causing injury in the person or property in which it resulted."). This rule was applied by the Oklahoma Supreme Court in a case involving policy language almost identical to that at issue here. In *Lumbermens Mut. Ins. Co., Mansfield, Ohio v. Blackburn*, 477 P.2d 62, 64 (Okl.1970), the court considered an exclusion for "bodily injury or property damage caused intentionally by or at the direction of the Insured" (emphasis omitted), and concluded:

> [T]he majority of the better-reasoned opinions in cases involving insurance policy exclusion provisions with language like the one involved here, or wording of similar import, require that the intention of the person, whose act caused the injury, 'must be to inflict the injury actually inflicted....'

*Id.* at 65. In short, the intention must be to cause the loss as well as to do the act.

The trial court found that the City's actions were not undertaken with any intent to cause a loss. As the trial court explained: "The City was only doing that which it believed it had a right to do within the law." Although the City acted intentionally to discharge the fill material into the Ft. Pierre slough, it did not intend to cause any harm by that conduct. The City did not intend to wrongfully discharge the fill without a necessary permit, because it believed a permit was not necessary. In fact, the City was correct in so thinking and the 8th Circuit Court of Appeals so held. Contrary to the majority's conclusion, the exclusion for intentional loss does not apply to this case.

*City of Fort Pierre*, 463 N.W.2d at 850. Therefore, if the insurer can prove that the collision and injury were intended, as these findings support, it can avoid liability on the coverage question.

Accordingly, this collision was not caused by accident, but by intention. Clearly, the injuries to Dawnelle and the damages to Anderson's truck are included within the intentions of Wertz to cause the collision. These injuries to Dawnelle and the damages to Anderson's truck were reasonably intended or expected "by [Wertz,] the insured." Therefore, even under the test in *Bollinger*, this result would be the same—no liability to the insurer. Therefore, the frequent reliance on the dissenting opinion of Justice Wuest in *Bollinger* is confusing and could produce future error. In addition, the second example used in footnote 2, from the *Vermont Mutual Insurance Company* case, is too simplistic because the factfinder must usually determine whether the injuries and damages were reasonably intended or expected by the insured. Here, they were. In *Bollinger*, they may or may not have been reasonably intended or expected by the insured.

AMUNDSON, Justice (dissenting).

The majority correctly lays out the applicable standard of review when it states:

> The insurer bears the burden of showing that it has no duty to defend its insured.

To satisfy this burden, "[t]he insurer must show that the claim *clearly* falls outside of policy coverage." "If, after considering the complaint, and when appropriate, other recorded evidence, doubt exists whether the claim against the insured arguably falls within the policy coverage, such doubts must be resolved in favor of the insured." (Citations omitted.) (Emphasis in original.)

However, I respectfully dissent from the majority opinion's analysis. Although this is a case of first impression in South Dakota, numerous other jurisdictions have considered the exact contract language at issue. Consistent with the public policy behind Financial Responsibility Laws like South Dakota's, a number of courts in other jurisdictions have held that "accident" or "caused by accident" should be interpreted from the standpoint of the injured party.* *Hudson v. State Farm Mut. Ins. Co.*, 569 A.2d 1168, 1170 (Del.1990); *Martin v. Chicago Ins. Co.*, 184 Ga.App. 472, 474-75, 361 S.E.2d 835, 838 (1987) *cert. denied* (Nov. 24, 1987); *Hartford Accident & Indemnity Co. v. Wolbarst*, 95 N.H. 40, 57 A.2d 151, 153 (1948); *Tomlin v. State Farm Mut. Auto. Liability*, 95 Wis.2d 215, 220-23, 290 N.W.2d 285, 288–89 (1980). *See also Pennsylvania Nat'l Mut. Cas. v. Miller Est.*, 185 N.J.Super. 183, 447 A.2d 1344 (1982).

"The primary purpose of compulsory motor vehicle liability insurance is to compensate innocent victims who have been injured by the negligence of financially irresponsible motorists. Its purpose is not, like that of ordinary insurance, to save harmless the tortfeasor himself.... In order to accomplish the objective of the law, the perspective here must be that of the victim and not that of the aggressor."

*Cotton States Mut. Ins. Co. v. Neese*, 254 Ga. 335, 338-40, 329 S.E.2d 136, 140 (1985) (quoting *Nationwide Mutual Ins. Co. v. Roberts*, 261 N.C. 285, 290-91, 134 S.E.2d 654, 659 (1964)).

We believe that viewing the policy language through the eyes of the injured party rings true with the legislative intent and public policy behind South Dakota's Financial Responsibility Law. *See Cimarron Ins. Co. v. Croyle*, 479 N.W.2d 881, 884 (S.D.1992). This public policy mandates coverage for injured parties as a result of automobile collisions. *Id.*

*The word "accident" and the South Dakota Financial Responsibility Law cover intentional acts.*

Accepting the injured party's point of view, an "accident" may result from an intentional act. "[T]he fact that injury is caused by an intentional act does not preclude it from being caused by accident if in that act something unforeseen, unusual and unexpected occurs which produces the result." *State Farm Mutual Auto Insurance Co. v. Treas*, 254 Md. 615, 255 A.2d 296, 298 (1969) (quotations omitted). *See also American Protection Ins. Co. v. Parker*, 150 Ga.App. 732, 733-34, 258 S.E.2d 540, 542 (1979). If the action is "unforeseen and not caused by his own misconduct, it is, although an intentional assault, accidental as to [the victim]." *Martin*, 361 S.E.2d at 837 (citing *American Protection*, 258 S.E.2d at 542).

Martin's injuries in this case were the result of an accident. Upon first driving out of the parking lot, Wertz threatened to go to the interstate and intentionally run into a semi truck to kill them both. As in the past, however, his threat did not come to pass. Wertz' intentions obviously changed, culminating in sexual relations with Martin. Only after leaving Aberdeen for the second time, while being pursued by law enforcement, did the Wertz vehicle collide with Anderson's semi. The trial court found Wertz acted intentionally. With regard to Martin's viewpoint, the consequence of Wertz' intentional or reckless behavior is irrelevant in that Martin was involved in a motor vehicle accident in which she was harmed.

The court in *Martin* held the word "accident," as used in Georgia's compulsory motor vehicle liability statute, included "intentional as well as unintentional injuries inflicted upon innocent persons by drivers whose liability would otherwise be covered by the policy." 361 S.E.2d at 837. The court recog-

---

* *See:* Annotation, Liability Insurance: *Assault as an "Accident," or Injuries Therefrom as "Acciden-* *tally" Sustained, within Coverage Clause*, 72 A.L.R.3rd 1090 (1976).

nized the public policy in that case, "enunciated in the advent of compulsory motor vehicle liability insurance, that innocent persons who are injured should have an adequate recourse for the recovery of their damages." *Id.* (citing *Anderson v. Southeastern Fidelity Ins. Co.*, 251 Ga. 556, 557, 307 S.E.2d 499 (1983)).

Likewise, the Delaware Supreme Court in *Hudson* interpreted "accident" to include intentional injury caused to an innocent party. 569 A.2d at 1170. In *Hudson*, State Farm's policy language is identical to that found in Wertz' policy. In finding State Farm had a duty to the injured victim, the *Hudson* court recognized a nationwide shift in public policy regarding automobile liability insurance. It held that when the phrase "caused by accident" is ambiguous, "the ambiguity must be resolved against the insurer who drafted the policy." *Id.* at 1171.

Given the public policy expressed in SDCL 32–35–2 and these decisions construing the same policy language, I would conclude that Martin's injuries were caused by an "accident" when viewing the case from victim's point of view. The majority's decision renders innocent victims, Martin and Anderson, unprotected, which the public policy in South Dakota obviously finds unacceptable. I would affirm the trial court in this case.