A92A1909. USAA PROPERTY & CASUALTY INSURANCE COMPANY v. WILBUR.
(427 SE2d 49)

BEASLEY, Judge.

Defendant USAA Property & Casualty Insurance Company was granted interlocutory appeal from the trial court's denial of its motion for summary judgment. Plaintiff Wilbur claims $50,000 of survivor's no-fault benefits (PIP) following his wife's death. He also alleges that USAA acted in bad faith in refusing the claim and seeks a 25 percent penalty, attorney fees, and punitive damages in the amount of

$5,000,000. USAA denied the claim on the ground that the injury and death to plaintiff's wife resulted from intentional criminal acts and not the operation, maintenance, or use of the vehicle.

Wilbur's wife was kidnapped in a grocery store parking lot by two men looking for a car, shoved into the insured vehicle, assaulted and raped in the vehicle, and driven to Kentucky. There she was forced to exit the car and walk to a nearby patch of woods, where she was stabbed to death. The question of law is whether or not there is no-fault coverage under such circumstances.

The Georgia Motor Vehicle Accident Reparations Act, OCGA § 33-34-1 et seq., imposed two requirements for no-fault recovery. *Kelley v. Integon Indem. Corp.*, 253 Ga. 269, 274 (320 SE2d 526) (1984). First, the accidental bodily injury must occur while the victim is "occupying" the insured vehicle. Ga. L. 1975, p. 1202, § 6 (formerly found at OCGA § 33-34-7 (1990); Ga. L. 1974, p. 113, § 7 (formerly found at OCGA § 33-34-7 (1990)). The occupancy requirement is met when the victim is "in or upon a motor vehicle or engaged in the immediate act of entering into or alighting from the motor vehicle." Ga. L. 1974, p. 113, § 2 (formerly found at OCGA § 33-34-2 (8) (1990)). Second, the accidental bodily injury must arise out of the operation, maintenance or use of the vehicle as a vehicle. Ga. L. 1974, p. 113, § 7 (formerly found at OCGA § 33-34-7 (a) (1990)); Ga. L. 1987, p. 1116, § 1 (formerly found at OCGA § 33-34-2 (9) (1990)).

The occupancy requirement had been broadly construed. For example, one remains an occupant of the car from which one is involuntarily ejected after an accident until one is able to remove oneself, or be removed, to a neutral zone. *State Farm Mut. Auto. Ins. Co. v. Holmes*, 175 Ga. App. 655 (333 SE2d 917) (1985). See also *Partridge v. Southeastern Fidelity Ins. Co.*, 172 Ga. App. 466 (323 SE2d 676) (1984).

The instant case differs from *Partridge* and *Holmes* in that it involves intentional criminal conduct resulting in the victim's death. The victim was murdered away from the insured vehicle, in a patch of woods. She was, however, forced to exit the car by at least one assailant and fatally injured before she could remove herself to a neutral zone. This would meet the involuntary ejection requirement of occupancy articulated in *Holmes*, if it is broadly construed.

Mrs. Wilbur's death might also be deemed an accident under Georgia insurance law. An intentional act may be an accident when, viewed from the victim's perspective, it is something unforeseen, unusual, and unexpected and not caused by the victim's own misconduct. *American Protection Ins. Co. v. Parker*, 150 Ga. App. 732, 733 (258 SE2d 540) (1979). See also *State Auto. Mut. Ins. Co. v. Nichols*, 710 FSupp. 1359, 1362 (N.D. Ga. 1989) (murder of insured on floorboard of insured vehicle held to be accident according to Georgia in-

surance law).

Assuming without deciding that Wilbur's claim meets the occupancy and accident requirements, the impediment to recovery is the additional requirement that the death arise from the operation, maintenance or use of the motor vehicle. Georgia law requires a causal connection between the use of the vehicle and the injury sustained. *Westberry v. State Farm Mut. Auto. Ins. Co.*, 179 Ga. App. 700, 701 (347 SE2d 688) (1986). See also *King v. St. Paul Fire &c. Co.*, 201 Ga. App. 851 (412 SE2d 614) (1991). Wilbur's position is that such connection exists because his wife's assailants wanted to steal a car and, but for the car, his wife would not have been kidnapped. USAA asserts that Mrs. Wilbur's injuries were too remote to the use of her vehicle, especially since she was not murdered inside the car.

This case resembles cases involving gunshot injuries in which a victim occupies the insured vehicle. In deciding whether a gunshot wound sustained by an insured in a motor vehicle can be considered an injury arising out of the use of the vehicle, the general rule is that " 'where a connection appears between the "use" of the vehicle and the discharge of the firearm and resulting injury such as to render it more likely that the one grew out of the other, it comes within the coverage defined.' " *Westberry*, supra at 701. There must be more of a connection between the use of a vehicle and the discharge of the firearm and resulting injury than mere presence in the vehicle when the injury is sustained. *Westberry*, supra at 702.

In *Westberry*, a taxi driver was killed with a handgun as he was robbed while seated in the front seat of his taxi in a parking lot. The court affirmed summary judgment for the insurer on the ground that there was no causal connection between the injury and the use of the vehicle, even though the assailants indicated that the crime had been committed to rob the proceeds obtained from the use of the vehicle as a taxi. Similarly, in *Washington v. Hartford Accident &c. Co.*, 161 Ga. App. 431, 432 (288 SE2d 343) (1982), the court found no causal connection where a passenger on a school bus was attacked with a pistol because the injury "resulted from a deliberate assault which took place in the vehicle simply because that is where the victim happened to be when the assailant came 'gunning' for him."

In *Parker*, supra, on the other hand, the plaintiff revoked her attacker's permission to drive the insured vehicle. The attacker beat her, placed her in a semi-conscious state on the road behind the car and ran over her body twice with the car. The court affirmed summary judgment for the insured because the vehicle became "uninsured" when the permission to drive it had been revoked. The victim was classified as a pedestrian injured by an uninsured motorist.

The instant case is distinguishable from *Parker* because the vehicle was not used to murder the victim. Nor was the car the locus of

the crime. It was simply used to transport her to Kentucky. Such use is too remote and attenuated to establish the required causal nexus. See *Westberry*, supra at 702. To hold that coverage for injuries *arising out of* the operation, maintenance, or use of an insured vehicle extends to injuries suffered whenever the vehicle is involved in any way would be contrary to the original intent of the contracting parties. *Nichols*, supra at 1363.

The insurer is entitled to summary judgment.

*Judgment reversed. Birdsong, P. J., and Andrews, J., concur.*

DECIDED JANUARY 11, 1993.

*Dennis, Corry, Porter & Gray, William E. Gray II, Robert G. Ballard*, for appellant.

*Nicholas E. Bakatsas*, for appellee.