A93A1285. FISHER v. CLARENDON NATIONAL INSURANCE COMPANY et al.

(437 SE2d 344)

ANDREWS, Judge.

Fisher appeals the grant of summary judgment to Clarendon National Insurance Company (Clarendon), the liability insurer of his employer, and The Hartford, his personal insurance company, in the insurers' suit for declaratory judgment regarding uninsured motorist coverage.[1] Fisher also appeals the denial of his motion for summary judgment on the coverage issue.

1. In ruling on a motion for summary judgment, the opposing party is given the benefit of all reasonable doubt, and the court should construe all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. *Langford v. Royal Indem. Co.*, 208 Ga. App. 128 (1) (430 SE2d 98) (1993).

So viewing the evidence on the insurers' motions, Fisher was employed by Bo-Mark Transport as a long distance driver. On the afternoon of October 3, 1989, Fisher was operating his fully loaded tractor trailer rig on Highway 278 in Columbia County on his way from South Carolina to Atlanta. He was not using nearby Interstate 20 because his rig was overloaded and he was going to drive around the interstate weigh station.

As he pulled onto four-lane Highway 278, he first noticed a black sports car in front of his rig. Fisher travelled behind the car for some distance until the highway changed from a four-lane to three lanes, one in each direction with a center passing lane. At this point, although there was no other traffic in front of it, the sports car slowed to approximately 20 mph.

When the two vehicles arrived at the next available passing lane in their direction, Fisher pulled his rig into the center lane to attempt to pass. As his rig gained speed, the car also began to gain speed until it was traveling at the same speed as the rig, adjacent to the rig's rear

---

[1] The accident involved a "phantom vehicle," allowing Fisher's claim for recovery under the uninsured motorist coverage of his personal policy.

tandem. At this point, Fisher was nearing the end of the passing zone and he began to pull to the right to force his way back into the lane of travel.

The car then backed off and followed the rig to the next passing lane, at which point the car began to pass until it came adjacent to Fisher's window, which was closed. There were two occupants in the car, but Fisher was able to see the driver's arm come across the passenger and shots were fired into his cab. One bullet shattered the window, entering his left arm and then his chest, causing serious injury. Another slug was found in the driver's door. The perpetrator was never apprehended. Other than the bullets, no contact occurred between the rig and the car.

Fisher was able to pull the rig to the side of the road and stop it. He flagged down a motorist and asked him to contact police and then went to a house nearby where Ms. Whitaker opened the door to find him bleeding profusely. He told her what had happened and she called authorities and attempted to stem the bleeding until they arrived.

2. "OCGA § 33-7-11 (b) (2) provides that 'in order for the insured to recover under the (uninsured motorist) endorsement where the owner or operator of any motor vehicle which causes bodily injury or property damage to the insured is unknown, actual physical contact must have occurred between the motor vehicle owned or operated by the unknown person and the person or property of the insured,' *except* where 'the description by the claimant of how the occurrence occurred is corroborated by an eyewitness to the occurrence other than the claimant.' " *Nat. Surety Corp. v. O'Dell*, 195 Ga. App. 374 (393 SE2d 504) (1990).

While the insurer and insured may contract for broader coverage than that provided by the statute, the policy must at least provide the coverage mandated by the statute. *Martin v. Chicago Ins. Co.*, 184 Ga. App. 472, 473 (361 SE2d 835) (1987). Such coverage includes the intentional acts of third parties as an "accident" if the remaining criteria are met. *USAA Property &c. Ins. Co. v. Wilbur*, 207 Ga. App. 57, 58 (427 SE2d 49) (1993); *Martin*, supra at 473. The two policies here provide the minimum coverage.

Fisher's arguments are, in the alternative, 1) that Ms. Whitaker corroborates his version of the incident, doing away with the necessity of contact between the vehicles; 2) that the bullet was a "phantom vehicle"; and 3) the act of firing from the car was "use of an uninsured vehicle."

(a) Fisher's argument is that Ms. Whitaker's description of his condition and what he told her about the accident are part of the res gestae and are sufficient to corroborate his claim, absent physical contact between the vehicles.

The res gestae evidentiary rule, however, does not supply the "eyewitness" required by the statute. "Contrary to plaintiff's contention otherwise, it is now well-settled that the corroboration requirement set forth in OCGA § 33-7-11 (b) (2) can only be met by the testimony of an eyewitness to the occurrence and not by circumstantial evidence, including statements given by the plaintiff to police, testimony of the plaintiff . . . and/or physical damage to the plaintiff's automobile. [Cits.]" *Murphy v. Ga. Gen. Ins. Co.*, 208 Ga. App. 501, 502 (431 SE2d 147) (1993). While she could testify to the aftermath, Ms. Whitaker did not see the other vehicle and this is insufficient corroboration. *Nat. Surety Corp. v. O'Dell*, supra at 375; *Hoffman v. Doe*, 191 Ga. App. 319, 321 (381 SE2d 546) (1989).

(b) Assuming without deciding that the incident here can be said to have arisen from the operation, maintenance, or use of the uninsured motor vehicle as required by the two policies and Georgia law,[2] this still does not answer the question of whether the bullet entering the rig from the car was "physical contact" between the vehicles for purposes of uninsured motorist coverage.

For this position, Fisher relies on an admitted extension of the rationale of *Ins. Co. of N. America v. Dorris*, 161 Ga. App. 46, 48 (288 SE2d 856) (1982).[3] There, two pickup trucks met and passed. As they did, the mirrors attached to the side of each struck the other. Spears stopped to examine the damage and the other driver returned to the scene where an argument ensued, resulting in the unidentified driver pointing a pistol at Spears. Spears jumped into his truck and, with Dorris as his passenger, sped away. The unidentified driver pursued, firing shots, some of which hit Spears' pickup. This pursuit resulted in Spears wrecking his truck and Dorris was injured in the wreck.

Now Justice Carley, writing for this court, concluded that the unidentified driver's pursuit of Spears and Dorris was such as to conclude that the injury to Dorris "arose from," "had its origins in," "grew out of" or "flowed from" the unidentified assailant's use of the truck and that "[i]t was because of the physical contact between the mirrors on the respective trucks that the entire incident began." Id. at 49 (2).

No case since has extrapolated from this case to find that a projectile launched from the uninsured car which strikes the victim's car is the required physical contact between the vehicles. We decline to

---

[2] See, e.g., *USAA Property &c. Ins. Co. v. Wilbur*, supra; *First Fin. Ins. Co. v. Rainey*, 195 Ga. App. 655 (394 SE2d 774) (1990); *Westberry v. State Farm &c. Ins. Co.*, 179 Ga. App. 700, 701 (347 SE2d 688) (1986); *Bennett v. Nat. Union Fire &c. Co.*, 170 Ga. App. 829, 830 (318 SE2d 670) (1984) which discuss this issue in the context of PIP no-fault coverage.

[3] This case was decided before the 1983 amendment which added OCGA § 33-7-11 (b) (2), allowing eyewitness corroboration in addition to physical contact. *Martin v. Doe*, 174 Ga. App. 156 (329 SE2d 291) (1985).

do so here. This is an issue more appropriately addressed by the legislature or the contracting parties. *Universal Security Ins. Co. v. Lowery*, 257 Ga. 363 (359 SE2d 898) (1987); *Langford*, supra at 128, 130 (3c).

*Judgment affirmed. Pope, C. J., and Birdsong, P. J., concur.*

DECIDED OCTOBER 14, 1993 —
RECONSIDERATION DENIED OCTOBER 29, 1993 ▉▉▉▉

*Thomas M. Hunter*, for appellant.

*Glover & Blount, Percy J. Blount, Fulcher, Hagler, Reed, Hanks & Harper, James W. Purcell, Sharon R. Blair*, for appellees.