A94A2663. ABERCROMBIE v. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY.
(454 SE2d 813)

BEASLEY, Chief Judge.

Plaintiff Abercrombie appeals the grant of summary judgment to Georgia Farm Bureau Mutual Insurance Company (insurer). Her lawsuit arose out of the following undisputed facts.

Abercrombie's husband Hal was involved in an automobile collision with a car driven by Jeffrey VanAlstine. In the car with him were passengers James Earl VanAlstine, Jr., and James Edward VanAlstine. After the collision an argument ensued and the vehicles proceeded down Roswell Road and onto I-285, where shots were exchanged between the vehicles. In a related action, the court found that "[a]s a result of a shot intentionally fired by James Earl VanAlstine at Abercrombie, Abercrombie was mortally wounded and died. James Edward VanAlstine was wounded in the leg by a shot fired by Abercrombie." The cause of Abercrombie's death was the gunshot wound, and James Earl VanAlstine was convicted of felony murder.

Beverly Abercrombie filed a complaint for wrongful death against the three VanAlstines. She alleged that "as a result of the operation of the vehicle driven by defendant Jeffrey Lee VanAlstine and the interference by defendant James Edward and James Earl VanAlstine with the plaintiff's operation of his vehicle, plaintiff lost control of his vehicle, crashed his vehicle, and was killed." In a declaratory judg-

ment action filed by the VanAlstines' liability carrier, the court determined that no liability coverage was available for any of the VanAlstine defendants. The basis for noncoverage was the exclusion for intentional acts, not a finding that the incident did not arise out of the ownership or use of the vehicle.

In this tort action, Georgia Farm Bureau was awarded summary judgment on the ground that Abercrombie's uninsured motorist coverage did not afford coverage because the incident did not arise from the operation, maintenance, or use of the uninsured motorist vehicle. Abercrombie contends that the incident is covered because the altercation arose out of the operation of the VanAlstine's automobile, and that the entire matter originated from the use of automobiles. She cites *Southeastern Fidelity Ins. Co. v. Stevens*, 142 Ga. App. 562 (236 SE2d 550) (1977), and *Ins. Co. of North America v. Dorris*, 161 Ga. App. 46 (1) (288 SE2d 856) (1982).

The insurer by its policy agreed to pay all sums that Abercrombie is entitled to recover from the owner or driver of the uninsured vehicle for which the owner or driver is liable, to the extent that they "result from the ownership, maintenance, or use of the 'uninsured motor vehicle.' " The initial collision, when the VanAlstine vehicle hit the decedent's vehicle, occurred as a result of the use of the vehicle. The two verbal altercations which followed resulted from and related to that improper or unintended use.

As in *Dorris*, supra, the uninsured VanAlstines then used their vehicle in order to enable them to inflict the injury upon Abercrombie which killed him. Paraphrasing *Dorris*, "Had it not been for the 'use' of the [VanAlstine vehicle], the continuing assault would not have happened and, presumably, [Abercrombie] would not have been injured. As thus viewed, the liability of the [VanAlstines] for the injuries to [Abercrombie] 'arose from', 'had its origins in', 'grew out of' or 'flowed from' [the] utilization of [the VanAlstine] vehicle as a means to perpetrate an unwarranted assault upon [him]." Id. at 48. The uninsured vehicle in *Dorris* was being used in the same way as here, chasing the other vehicle so as to inflict injury on the driver. In both instances, the vehicles were being used to enable an occupant to shoot at the chased vehicle for the purpose of injuring its driver.

The fact that the ultimate injuries to the suing passengers in the *Dorris* case resulted when their vehicle overturned, rather than from the gunshots being fired from the chasing vehicle, does not preclude coverage in the latter instance; in fact, the vehicle's use in this case is even more closely connected with the injury than the more remote reason for the *Dorris* passenger injuries. The vehicle in the *Dorris* case was not being used to cause the truck's overturn, whereas the VanAlstine vehicle was being used to position the passenger close enough to shoot driver Abercrombie.

These circumstances brought the incident within the scope of the policy's language. " 'Use' while an admittedly elusive term, may be defined as 'to employ for some purpose.' [Cit.]" *Rustin v. State Farm &c. Ins. Co.*, 254 Ga. 494, 495 (1) (330 SE2d 356) (1985). "This court has adopted a liberal definition of the word 'use.' " *Ga. Farm &c. Ins. Co. v. Greene*, 174 Ga. App. 120, 122 (329 SE2d 204) (1985).

In addition, the policy clause which is being construed in this case "is usually interpreted in a broad sense." *Southeastern Fidelity Ins. Co.*, supra at 563 (1). "[T]he term 'arising out of' does not mean proximate cause in the strict legal sense, nor require a finding that the injury was directly and proximately caused by the use of the vehicle, nor that the insured vehicle was exerting any physical force upon the instrumentality which was the immediate cause of the injury. . . . [A]lmost any causal connection or relationship will do. . . ." Id. at 563-564. Although that case involved the personal injury protection coverage rather than the uninsured motorist coverage, the *Dorris* case illustrates that the term is identically construed. This slight causal connection is what reasonable men and women would understand the phrase "resulting from the use" of a vehicle to mean. It comports with the usual, natural and ordinary meaning of the terms.

As in *Dorris*, there is evidence that the shot was fired by an occupant of a vehicle in the course of a chase which had itself resulted from an incident arising out of the uninsured vehicle's use. That was critical in *Dorris*, see page 47 (1), and is present here. The movement of the vehicle was integral to, and enabled, the assault. It was not merely incidental; it was inextricably linked. The vehicle was being used for transportation at the time of the shooting and the driving of it facilitated the attack.

For instructive cases in other jurisdictions, see *State Farm &c. Ins. Co. v. Davis*, 937 F2d 1415 (9th Cir. 1991) (the insured, a passenger in his own vehicle, told the driver to overtake and pass a car which had passed them, and when he did, the insured shot and injured the other car's driver; this constituted "use" under the policy because it had more than a minimal causal connection with the incident); *Continental Western Ins. Co. v. Klug*, 415 NW2d 876 (Minn. 1987) (the auto was an " 'active accessory' "; there was no independent significant break in the causal link between " 'use' " and injury; the auto was being used for an intended purpose, i.e., transportation); *Allstate Ins. Co. v. Gillespie*, 455 S2d 617 (Fla. App. 1984).

Summary judgment to the insurer was not warranted.

*Judgment reversed. McMurray, P. J., Pope, P. J., Johnson, Smith and Ruffin, JJ., concur. Birdsong, P. J., Andrews and Blackburn, JJ., dissent.*

ANDREWS, Judge, dissenting.

I respectfully dissent. As the majority notes, the policy clearly provided that the injuries must arise from the ownership, maintenance or use of the vehicle. In this matter, the incident for which recovery is sought did not arise out of the operation, maintenance or use of the VanAlstine's automobile and the superior court's grant of summary judgment should be affirmed.

In *Southeastern Fidelity Ins. Co. v. Stevens*, 142 Ga. App. 562 (236 SE2d 550) (1977), the general rule set forth was that "where a connection appears between the 'use' of the vehicle and the discharge of the firearm and resulting injury such as to render it more likely that the one grew out of the other, it comes within the coverage defined." Id. at 564. In *Bennett v. Nat. Union Fire Ins. Co.*, 170 Ga. App. 829, 830 (318 SE2d 670) (1984), the court stated that in order to find coverage, "[t]here must be more of a connection between the use of the vehicle and the discharge of the firearm and the resulting injury than mere presence in the vehicle when the injury was sustained." Id. at 830-831.

Here, Abercrombie's injury bore no apparent relation to the operation of the vehicle or to the use to which the vehicle was put. To allow uninsured motorist coverage because the initial accident between the parties occurred in a vehicle stretches the requisite connection too far. "The question is not whether the insured's injury had some remote connection to the use of the automobile. . . ." *Westberry v. State Farm &c. Ins. Co.*, 179 Ga. App. 700, 701 (347 SE2d 688) (1986) (summary judgment to insurer affirmed in action for personal injury protection benefits arising out of the shooting death during an armed robbery of taxi driver, while he was seated in his parked taxi). The applicable principles to the inquiry here have been set forth numerous times in contexts other than the uninsured motorist coverage. See, e.g., *Rustin v. State Farm &c. Ins. Co.*, 254 Ga. 494 (330 SE2d 356) (1985); *Washington v. Hartford Accident &c. Co.*, 161 Ga. App. 431 (1) (288 SE2d 343) (1982); *Weeks v. Auto-Owners Ins. Co.*, 175 Ga. App. 725 (334 SE2d 325) (1985); *Davis v. Criterion Ins. Co.*, 179 Ga. App. 235, 236 (345 SE2d 913) (1986); *King v. St. Paul Fire &c. Co.*, 201 Ga. App. 851 (412 SE2d 614) (1991); *USAA Property &c. Co. v. Wilbur*, 207 Ga. App. 57 (427 SE2d 49) (1993); compare *Ga. Farm &c. Ins. Co. v. Burnett*, 167 Ga. App. 480 (1) (306 SE2d 734) (1983).

Abercrombie's death was not the result of an automobile accident, but was caused by a voluntary, deliberate, intervening act which was unforeseeable and which rendered the use of the vehicle incidental. "Similarly, in *Washington*[, supra], the court found no causal connection where a passenger on a school bus was attacked with a pistol because the injury resulted from a deliberate assault which took

place in the vehicle simply because that is where the victim happened to be when the assailant came 'gunning' for him." (Citations and punctuation omitted.) *USAA Property &c. Co. v. Wilbur,* supra at 59.

In *Ins. Co. of North America v. Dorris,* 161 Ga. App. 46 (1) (288 SE2d 856) (1982), the case involving uninsured motorist benefits upon which the majority relies, the injuries resulted not from gunfire, but from an automobile accident. The injuries in *Dorris* were caused by the overturning of the truck. In the instant matter, there was no dispute that Abercrombie's death was caused by the bullet wound. Thus, unlike the situation in *Dorris,* the fact that Abercrombie was shot in his car had no bearing on his death. The fact that the vehicle was the "mere situs" of the intentional gunshot exchange is not enough to warrant this coverage. See generally *Colonial Ins. Co. of California v. Lumpkin,* 207 Ga. App. 376 (428 SE2d 351) (1993).

I am authorized to state that Presiding Judge Birdsong and Judge Blackburn join in this dissent.

DECIDED MARCH 10, 1995 — 

*Michael P. Froman,* for appellant.

*Downey & Cleveland, Joseph C. Parker, W. Curtis Anderson,* for appellee.