[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 29, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-13179
Non-Argument Calendar

_____

D. C. Docket No. 06-02553-CV-TCB-1

TRAVCO INSURANCE COMPANY,

Plaintiff-Counter-
Defendant-Appellee,

versus

SHELLY WILLIAMS,
ALBERT HOSTETTER,

Defendants-Counter-
Claimants-Appellants

KENDALL MARKELL BOLDEN, et al.,

Counter-Defendants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(October 29, 2008)

Before BIRCH, DUBINA and KRAVITCH, Circuit Judges.

PER CURIAM:

On November 7, 2005, Kendall Bolden, Elliot Mitchell, and Terrence Reid were completing a drug deal in a pickup truck in a parking lot at a neighborhood shopping center. Instead of purchasing the drugs, however, Bolden and Mitchell decided to rob Reid. During the robbery, Mitchell struck Reid on the head with the gun, causing the gun to discharge. The shot shattered the glass of the truck's rear passenger window.

Shelly Williams and her husband Albert Hostetter had pulled into this same parking lot and, as Williams was reaching into the backseat of her car to retrieve some items that had fallen on the floor, she was struck by a stray bullet and paralyzed from the chest down. Williams did not see from where the shot was fired, but she did see the pickup truck leaving the parking lot. Investigators determined that the shot was fired from a pickup truck in the same parking lot. At no time was there any contact between Williams and Hostetter and the three men in the truck. And there was no evidence the gun discharged due to any movement of the truck.

Williams and Hostetter sought insurance coverage from two insurance policies. First, they sought coverage from Bristol, who insured the owner of the

truck Bolden, Mitchell and Reid used. Because the policy limits from their own policy through Travco exceeded the available payout from Bristol, Williams and Hostetter also sought coverage from Travco as part of their uninsured motorist policy. Under the terms of both policies, coverage depended on whether the bodily injury arose "out of the ownership, maintenance or use" of the vehicle.

Travco filed an action seeking a declaratory judgment that its policy did not provide coverage. Williams and Hostetter filed a counterclaim seeking a declaratory judgment that the Travco policy provided coverage. They also filed a motion to add Bolden, Mitchell, and Bristol as defendants to the counterclaim. The court ordered joinder of all the claims under Fed. R. Civ. P. 20(a).

Williams and Hostetter then filed an amended counterclaim in which they sought a declaratory judgment against Travco and added tort claims against Bolden and Mitchell as defendants-in-counterclaim. They also alleged that Bristol was obligated to provide indemnity benefits. Travco, Bristol, and Williams filed separate motions for summary judgment. The district court granted Travco's and Bristol's motions for summary judgment, concluding that the injuries did not arise out of the use of the truck and thus the policies did not provide coverage. This appeal followed.

We review a district court's grant of summary judgment de novo, viewing

3

the evidence in the light most favorable to the party opposing the motion. <u>Skrtich v. Thornton</u>, 280 F.3d 1295, 1299 (11th Cir. 2002).

The parties agree that South Carolina law governs the claims against Bristol and Georgia law governs the claims against Travco. They also agree that the issue in dispute is whether the injuries "arise out of the ownership, maintenance, or use" of the vehicle as defined by state law.

South Carolina law provides for a three-part test: (1) there was a causal connection between the vehicle and the injury; (2) there was no act of independent significance breaking the causal link; and (3) the vehicle was being used for transportation at the time of the assault. <u>State Farm Fire & Cas. Co. v. Aytes</u>, 503 S.E.2d 744, 745 (S.C. 1998). "The causal connection is established where it can be shown the vehicle was an 'active accessory' to the assault. . . . [and] is something less than proximate cause and something more than the vehicle being the mere site of the injury. The injury must be foreseeably identifiable with the normal use of the vehicle." <u>Id.</u> ; <u>see also</u> <u>State Farm Mut. Auto Ins. Co. v. Bookert</u>, 523 S.E.2d 181, 182 (S.C. 1999).

Under Georgia law, there must be a "causal connection between the use of the vehicle and the injury sustained." <u>USAA Property & Cas. Ins. Co. v. Wilbur</u>, 427 S.E.2d 49 (Ga. Ct. App. 1993). Georgia courts have held that the phrase "arising out of" is interpreted broadly to encompass situations where "the injury

4

originated from, had its origin in, grew out of, or flowed from the use of the vehicle." Southeastern Fidelity Ins. Co. v. Stevens, 236 S.E.2d 550 (Ga. Ct. App. 1977). But this broad interpretation does not extend the contract language "to something distinctly remote." Id. Rather, the state courts have explained the general rule is that "where a connection appears between the 'use' of the vehicle and the discharge of the firearm and resulting injury such as to render it more likely that the one grew out of the other, it comes within the coverage defined." Id.; see also Westberry v. State Farm Mut. Auto Ins. Co., 347 S.E.2d 688, 689 (Ga. Ct. App. 1986).

Upon review of the record and the parties' briefs, we agree with the district court's analysis. We are not persuaded by Williams's argument that the district court misapplied state law; nor do we consider the argument, raised for the first time on appeal, that the contracts were ambiguous and should be construed in Williams's favor. Accordingly, we affirm for the reasons given in the district court's order dated March 4, 2008.

**AFFIRMED.**