A11A2185. MOUGH et al. v. PROGRESSIVE MAX INSURANCE COMPANY.

(724 SE2d 414)

BARNES, Presiding Judge.

This case addresses whether the parents and estate administrator of an insured man who was shot and killed on his motorcycle may recover damages from the man's uninsured motorist carrier. The trial court granted partial summary judgment to the insurance company, and the parents and administrator appeal. For the reasons that follow, we affirm.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, and that the undisputed facts, viewed in a light most favorable to the party opposing the motion, warrant judgment as a matter of law. OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). "Our review of a grant of summary judgment is de novo, and we view the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmovant." *McKinnon v. Progressive Bayside Ins. Co.*, 278 Ga. App. 429, 430 (629 SE2d 100) (2006).

So viewed, the record shows that Chélsea Gear was driving her father's car when she became involved in an altercation with 21-year-old motorcyclist B. J. Mough. As traffic behind Mough

slowed, Chelsea passed him on the right and cut back in front of him. At a stop light, Mough pulled up beside the car and Chelsea thought he was trying to intimidate her by staring, so she made an obscene gesture toward him. She then turned right toward home, and Mough followed her.

Chelsea's sister Samantha Gear was a passenger in the car, and called their mother Diana Gear to tell her the girls were being followed by a motorcyclist. Chelsea stopped at a stop sign, Mough pulled up beside her, and as both vehicles started forward, Chelsea turned toward the left and collided with the motorcycle. Chelsea did not stop. Diana Gear told her husband Richard Gear that the girls were being followed, and he waited for them in his driveway, holding a gun. Chelsea pulled the car into the driveway, close to the house. Mough rode slowly by the house, and after he turned around at the end of the street, Richard Gear shot and killed him.

Individually and as the administrators of Mough's estate, Mough's parents sued all four members of the Gear family as well as Mough's uninsured motorist carrier, Progressive Max Insurance Company.[1] Progressive moved for summary judgment, arguing that Richard Gear's conduct did not arise out of the use of the covered motorcycle and thus damages resulting from that conduct were not covered by Mough's uninsured motorist policy. The trial court agreed that Progressive was entitled to partial summary judgment on Mough's wrongful death claim, but denied its motion for summary judgment on Mough's claim for damages resulting from physical contact between Mough and the Gear vehicle.

The Moughs appeal the trial court's grant of summary judgment to Progressive on their wrongful death claim, arguing that issues of fact in the record would authorize a jury to find that the uninsured motorist policy covered the circumstances of B. J. Mough's death.

The insurance policy provides coverage for

> damages, other than punitive or exemplary damages, which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury or property damage:
>
> 1. sustained by an insured person;
>
> 2. caused by an accident; and
>
> 3. arising out of the ownership, maintenance, or use of an uninsured motor vehicle.

---

[1] Richard Gear was incarcerated in a state prison when he answered the complaint in March 2010

The Moughs argue that the Gear vehicle was used to lead their son

> to his death because the Gear sisters used it to leave the
> location of a traffic accident that obviously did not occur in
> the presence or vicinity of their father and his gun. [Cites.]
> Without the Gear vehicle leading B.J. Mough to the barrel of
> Defendant Richard Gear's gun, the occasion for B.J. Mough
> to be shot at and killed would not have occurred.

"Arising out of" does not equal proximate cause or require that the injury be directly caused by the use of a vehicle; only a "slight causal connection" between the damages and the use of the vehicle is required. *Abercrombie v. Ga. Farm Bureau Mut. Ins. Co.*, 216 Ga. App. 602, 604 (454 SE2d 813) (1995). In *Abercrombie*, two cars collided, the drivers argued, and a passenger in one car shot and killed the driver of the other car. His widow sued the shooter and his driver, who had no liability coverage because the driver's insurance policy excluded damages resulting from intentional acts. The widow also sued her husband's uninsured motorist carrier, and this court held that the shooting was covered because the initial collision arose from the "use" of the uninsured vehicle, which was again "used" to chase and inflict injury on the decedent. Id. at 603.

Numerous cases address whether injuries from gunshots arose from the use of a vehicle. On the one hand, injuries resulting from an overturned truck that wrecked because an unidentified motorist shot at it during a high speed chase following a collision "indisputably" arose from the use of the uninsured vehicle. See *Ins. Co. of North America v. Dorris*, 161 Ga. App. 46, 47 (1) (288 SE2d 856) (1982). In a different context, injuries caused by the accidental discharge of a gun inside a vehicle traversing bumpy roads are also caused by the use of the vehicle. See *Payne v. Southern Guaranty Ins. Co.*, 159 Ga. App. 67 (282 SE2d 711) (1981); *Southeastern Fidelity Ins. Co. v. Stevens*, 142 Ga. App. 562, 563-564 (1) (236 SE2d 550) (1977).

On the other hand, we have held that various incidents of "road rage" did not arise out of the use of a vehicle so as to be covered by an insurance policy, in cases unlike this one where the raging person was actually the vehicle's driver. See *Rustin v. State Farm &c. Ins. Co.*, 254 Ga. 494, 495 (1) (330 SE2d 356) (1985) (shooting after both drivers left their vehicles did not "result from" vehicle use); *Longabaugh v. State Farm &c. Ins. Co.*, 205 Ga. App. 854, 855 (1) (424 SE2d 49) (1992) (emotional distress from other driver's derogatory remarks after collision did not result from vehicle use).

"[T]he general rule is that where a connection appears between the 'use' of the vehicle and the discharge of the firearm and resulting

injury[,] such as to render it more likely that the one grew out of the other, it comes within the coverage defined." (Citation and punctuation omitted.) *USAA Property &c. v. Wilbur*, 207 Ga. App. 57, 59 (427 SE2d 49) (1993) (use of insured vehicle to transport murder victim to woods where she was killed is "too remote and attenuated to establish the required causal nexus"). So, for example, the death of a taxi driver who was shot in his cab did not arise out of the use of his vehicle, see *Westberry v. State Farm &c.*, 179 Ga. App. 700, 700-702 (1) (347 SE2d 688) (1986); nor did the death of a passenger shot inside a bus arise out of the use of the bus. See *Payne v. Twiggs County School Dist.*, 269 Ga. 361, 363-364 (2) (496 SE2d 690) (1998); *Washington v. Hartford Accident & Indem. Co.*, 161 Ga. App. 431, 431-432 (1) (288 SE2d 343) (1982).

In this case, the father who shot and killed B. J. Mough was never inside the vehicle driven by his daughter, and the vehicle itself did not cause B. J.'s death. While Chelsea Gear's driving may have provoked a confrontation of some sort, and her failure to stop after colliding with Mough's motorcycle may have "led" him to her driveway, Richard Gear's decision to shoot Mough was independent of his daughter's use of the vehicle. "Simply put, [B. J. Mough's] physical injuries were too remote from [Gear's] vehicle use, ownership, or maintenance to fall within the UM provision." *Kinzy v. Farmers Ins. Exchange*, 293 Ga. App. 509, 510-511 (1) (667 SE2d 673) (2008). While the "use" of the Gear vehicle may have led B. J. Mough to pass by the Gears' driveway, the damages leading to his death were caused by the father's independent actions. Accordingly, we find no error in the trial court's grant of partial summary judgment to Progressive.

*Judgment affirmed. Adams and Blackwell, JJ., concur.*

DECIDED FEBRUARY 27, 2012.

*Eberhardt & Hale, M. Eric Eberhardt*, for appellants.
*Downey & Cleveland, Robert C. Harrison, Joshua S. Ruplin, Worsham, Corsi, Scott & Edwards, Toqeer A. Chouhan*, for appellee.