**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**November 1, 2024**

# In the Court of Appeals of Georgia

A24A1114. TRAVELERS PROPERTY CASUALTY INSURANCE CO. v. LIPSEY.

GOBEIL, Judge.

This lawsuit involves the application of an uninsured motorist ("UM") policy to a shooting incident. Specifically, Keyana Lipsey seeks to recover UM benefits after being shot by unknown assailants while she was sitting in a vehicle insured by Travelers Property Casualty Insurance Co. ("Travelers"). The trial court denied Travelers's motion for summary judgment on UM coverage, and Travelers appeals. For the reasons that follow, we reverse the trial court's judgment and find that Travelers was entitled to summary judgment.

"We review de novo a grant or denial of summary judgment, viewing the evidence and all reasonable conclusions and inferences drawn from it in the light most

favorable to the nonmovant." *Callaway Gardens Resort, Inc. v. Grant*, 365 Ga. App. 222, 223 (878 SE2d 65) (2022) (citation and punctuation omitted).

So viewed, the record in this case shows that on June 7, 2021, Lipsey was a passenger in a car being driven by Rylie Mayfield. The girls had visited a park and were in Mayfield's car, stopped in a line of cars waiting to exit the park. Unidentified assailants shot at Mayfield's car from another vehicle, striking Lipsey in the foot. As far as Lipsey is aware, the perpetrators were never idenitifed, and Lipsey had no reason to believe she or anyone in Mayfield's vehicle was targeted for any specific reason. Lipsey was transported to the emergency room and eventually had surgery to repair damage to her foot caused by the bullet.

In July 2022, Lipsey filed a negligence action against John Doe. Mayfield's car, a Hyundai Elantra, was insured through Travelers (via Mayfield's parents, who own the vehicle). In connection with her lawsuit, Lipsey served Travelers as the uninsured motorist ("UM") insurance carrier. Travelers answered the complaint, and after conducting discovery, filed a motion for summary judgment. The policy at issue provides UM coverage only for bodily injury that "arises out of the ownership, maintenance or use of an uninsured motor vehicle." As argued by Travelers, there

2

was no causal connection between Lipsey's injury and the use of an uninsured motor vehicle. The trial court granted in part Travelers's motion, finding that Lipsey could not recover punitive damages or attorney fees from Travelers under Georgia law (a finding not contested by Lipsey). However, the court also denied in part the motion, finding that Travelers "failed to show no causal connection exists between [Lipsey's] injury and the use of the uninsured motor vehicle." Travelers appealed.[1]

1. Travelers first argues that the court erred in finding that a question of fact existed, when the only issue in dispute is the legal interpretation of the insurance policy. We agree. The material facts here are undisputed: Lipsey was in vehicle that was insured by Travelers, when unknown assailants shot and injured her from another vehicle. The identity of the assailants and their motivation for the shooting is unknown. The vehicle in which Lipsey was a passenger was insured by Travelers (subject to the terms of the insurance policy). There are no additional issues of fact for a jury to resolve before the court may interpret the insurance policy. See *Old Republic Nat. Title Ins. Co. v. RM Kids, LLC*, 352 Ga. App. 314, 317 (1) (835 SE2d 21) (2019) (insurance policies "are contracts, the construction and interpretation of which

---

[1] We granted Travelers's application for interlocutory appeal. Case No. A24I0102.

involve questions of law for the court"); OCGA § 13-2-1. Accordingly, the trial court erred in denying summary judgment to Travelers in this respect.

2. Finding this case ripe for summary review, we now turn to the policy in question. In pertinent part, the policy provides as follows:

INSURING AGREEMENT

We will pay compensatory damages, in excess of any deductible that applies to this coverage as shown in the Declarations, which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury" or "property damage":

1. Sustained by an "insured"; and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".[2]

The trial court found that "Travelers failed to show no causal connection exists between [Lipsey's] injury and the use of the uninsured motor vehicle." Travelers

---

[2] Travelers does not appear to dispute that Lipsey qualifies as an "insured" who sustained a "bodily injury" caused by "an accident" as required by the policy.

4

argues that the trial court erred in two respects. First, Travelers argues that it is not the party bearing the burden of proof on this claim; so, it was not required to affirmatively demonstrate a lack of a causal connection. We agree. See *Travelers Home & Marine Ins. Co. v. Castellanos*, 297 Ga. 174, 176 (1) (773 SE2d 184) (2015) (recognizing that an insured bears "the burden of proving that a claim falls within the coverage of the [UM] policy") (citation and punctuation omitted); *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010) (recognizing that "a defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case, but may point out by reference to the evidence in the record that there is an absence of evidence to support any essential element of the nonmoving party's case") (citation and punctuation omitted). Therefore, Travelers's failure to affirmatively disprove a causal connection was not a proper reason to deny it summary judgment.

Second, Travelers argues that the trial court — seeking merely a "causal connection" between Lipsey's injury and the use of an uninsured motor vehicle — misstates the test we have applied in interpreting similar insurance policy provisions. Again, we agree. For example, in *Bennett v. Nat. Union Fire Ins. Co. of Pittsburgh,*

5

*Pennsylvania*, the insured parties sought to claim benefits from their insurance policy that covered "injuries caused by an accident arising out of the operation, maintenance or use of a motor vehicle as a vehicle" after they were intentionally shot while in their vehicle by an assailant outside the vehicle. 170 Ga. App. 829, 829 (318 SE2d 670) (1984). We explained that the general rule in these situations is that the injury can be said to have "ar[isen] out of or resulting from the use of the vehicle . . . where a connection appears between the 'use' of the vehicle and the discharge of the firearm and resulting injury *such as to render it more likely that the one grew out of the other*[.]" Id. at 830 (emphasis supplied) (quoting *Washington v. Hartford Accident & Idem. Co.*, 161 Ga. App. 431, 431 (1) (288 SE2d 343) (1982)); see also *Westberry v. State Farm Mut. Automobile Ins. Co.*, 179 Ga. App. 700, 700-701 (1) (347 SE2d 688) (1986) (applying *Bennett* and other cases to conclude that an insured who was shot while in her vehicle was not entitled to coverage for "an injury arising out of the use of the vehicle"). In *Bennett*, we found no relation between the injury and the use to which the vehicle was being put; the Bennetts were merely located in a vehicle when they were injured. Id. at 830-831.

6

Here, the circumstances are slightly different than the cases cited above, as Lipsey was not seeking coverage based on her mere presence in a vehicle when she was injured. Rather, she was seeking UM coverage based on the *shooter's* presence in *his vehicle* (or the vehicle in which he was riding, presumably uninsured) when he caused the injury. However, we see no reason why the test would be any different in these circumstances: the UM provision under which Lipsey is seeking coverage also requires that the injury "arise out of the ownership, maintenance or use of" a motor vehicle.[3] Accordingly, Lipsey must show a connection between the use of the shooter's vehicle and the discharge of the firearm and resulting injury such as to render it more likely that the one grew out of the other.

Here, beyond the shooter's presence in a vehicle, there is no causal connection between the injury and how the shooter's vehicle was being used. The shooter did not

---

[3] At least one federal court, applying Georgia law, has come to the same conclusion: the test from *Bennett* and other cases applies when the shooter is merely positioned inside a motor vehicle when he caused an injury. See *Hertz Corp. v. Denison*, No. 2:15-CV-00214-RWS (II) (A) (N.D. Ga. Sept. 20, 2018) (examining several Georgia cases to determine that the victim, who sought coverage under the assailant's rental van insurance policy, was not entitled to benefits, as the assailant's position inside or just outside the vehicle when he shot the victim did not provide a sufficient causal connection between the use of the vehicle and the injury to fall under the policy's terms).

use the vehicle to cause the injury; he used a firearm. And, Lipsey was not injured by any use of the shooter's vehicle; she was injured by the bullet that struck her. Contrary to Lipsey's argument, the fact that the shooter was transported away from the scene after the shooting in the vehicle does not create a causal connection between the injury and the use of the vehicle. Nothing about the movement of the vehicle caused or aggravated her injury. Compare *Rustin v. State Farm Mut. Auto. Ins. Co.*, 254 Ga. 494, 495 (1) (330 SE2d 356) (1985) (holding that the shooting victim's death was not caused by the "use" of a motor vehicle even though the shooter used the vehicle to chase the victim and transport himself to the ultimate scene of the deadly confrontation), with *Abercrombie v. Georgia Farm Bureau Mut. Ins. Co.*, 216 Ga. App. 602, 602-604 (454 SE2d 813) (1995) (holding that the shooting victim's death was caused by the "use" of a motor vehicle where the shooter shot the victim multiple times while both parties were inside moving vehicles; the driver of the shooter's vehicle positioned his vehicle so that the passenger/shooter could shoot and kill the victim, who was also in a moving car).

Given the foregoing, we find insufficient evidence connecting Lipsey's injury and the use of an uninsured motor vehicle. Therefore, her injury falls outside the

8

policy's terms of UM coverage, and the trial court erred in denying summary judgment to Travelers accordingly.

*Judgment reversed. Pipkin, J., concurs and Barnes, P. J., dissents.*

# In the Court of Appeals of Georgia

A24A1114. TRAVELERS PROPERTY CASUALTY INSURANCE CO. v. LIPSEY.

BARNES, Presiding Judge, dissenting.

Because Keyana Lipsey presented evidence that her injury arose from the use of an uninsured motor vehicle, the trial court properly denied in part the motion for summary judgment filed by Travelers Property Casualty Insurance Company. I therefore respectfully dissent.

As noted by the majority, the insurance policy clause at issue provides uninsured motorist ("UM") coverage for bodily injury that arises out of the maintenance, ownership, or use of an uninsured motor vehicle. In determining whether an injury caused by a gunshot arose out of the use of a vehicle, the general rule is that "where a connection appears between the 'use' of the vehicle and the discharge of the firearm and resulting injury such as to render it more likely that the one grew out of the other, it comes within the coverage defined." *Southeastern Fidelity*

*Ins. Co. v. Stevens*, 142 Ga. App. 562, 564 (1) (236 SE2d 550) (1977). Notably, we have "adopted a liberal definition of the word 'use'" in this context, and "'[u]se' while an admittedly elusive term, may be defined as 'to employ for some purpose.'" (Citations and punctuation omitted.) *Abercrombie v. Georgia Farm Bureau Mut. Ins. Co.*, 216 Ga. App. 602, 604 (454 SE2d 813) (1995). Moreover, the policy clause that we are construing in this case "is usually interpreted in a broad sense." (Citation and punctuation omitted.) Id. See *Southeastern Fidelity Ins. Co.*, 142 Ga. App. at 563 (1). As we have explained:

> The term "arising out of" does not mean proximate cause in the strict legal sense, nor require a finding that the injury was directly and proximately caused by the use of the vehicle, nor that the insured vehicle was exerting any physical force upon the instrumentality which was the immediate cause of the injury. Almost any causal connection or relationship will do.

(Citation and punctuation omitted.) *Abercrombie*, 216 Ga. App. at 604. See *Southeastern Fidelity Ins. Co.*, 142 Ga. App. at 563-564 (1). And we have emphasized that "[e]ach case turns on its precise individual facts. The question to be answered is whether the injury originated from, had its origin in, grew out of, or flowed from the use of the vehicle." *Southeastern Fidelity Ins. Co.*, 142 Ga. App. at 564 (1).

Applying these principles, we concluded in *Abercrombie,* 216 Ga. App. 602, that there was a sufficient connection between the "use" of the uninsured vehicle and the discharge of the firearm causing the injury to entitle the plaintiff to UM benefits. Id. at 603-604. In that case, the plaintiff sought to recover UM benefits for the death of her husband, who was shot by a passenger riding in an uninsured motor vehicle that was chasing the husband's vehicle. Id. at 602-603. We held that the death of the husband "arose from, had its origins in, grew out of, or flowed from the utilization of the [uninsured] vehicle as a means to perpetrate an unwarranted assault upon him." (Citation and punctuation omitted.) Id. at 603. We further reasoned: "The movement of the vehicle was integral to, and enabled, the assault. It was not merely incidental; it was inextricably linked. The vehicle was being used for transportation at the time of the shooting and the driving of it facilitated the attack." Id. at 604.

The present case is controlled by *Abercrombie.* In her deposition, Lipsey testified that at the time of the shooting incident, she was a passenger in her friend's car at a park. The car was stopped in a line of cars waiting to exit the park, and according to Lipsey, while they were in line, they heard gunfire near the entrance. Lipsey testified that a vehicle then drove down into the park, and, as it drove by her friend's car, an

4

unidentified assailant fired several shots from the other vehicle, one of which struck and injured her.

In light of Lipsey's deposition testimony, there was evidence that, as in *Abercrombie*, the other vehicle "was being used for transportation at the time of the shooting and the driving of it facilitated the attack"; that the other vehicle "was integral to, and enabled, the assault"; that the other vehicle was "being used to enable an occupant to shoot"; and that Lipsey's injury "arose from, had its origins in, grew out of, or flowed from the utilization of the [uninsured] vehicle as a means to perpetrate an unwarranted assault upon [her]." (Citation and punctuation omitted.) 216 Ga. App. at 603-604. Compare *Rustin v. State Farm Mut. Auto. Ins. Co.*, 254 Ga. 494, 495 (1) (330 SE2d 356) (1985) (concluding that the shooting victim's death did not result from the "use" of an uninsured vehicle, where the other driver shot the victim during a roadside confrontation that occurred after both men had exited their vehicles). And I see no reason why the fact that the assailant shooting from the other vehicle hit the wrong target should affect the result. Consequently, based on the reasoning of *Abercrombie*, in my view there was, at the very least, a genuine issue of material fact as to whether Lipsey's injury arose out of the use of an uninsured motor

vehicle so as to trigger coverage under the UM policy. Accordingly, the trial court did

not err in denying in part Travelers's motion for summary judgment.